**E.J. WIMBERLY and Frances Wimberly, Appellants,**

v.

**LONE STAR GAS COMPANY, Appellee.**

No. 2–90–299–CV.

Court of Appeals of Texas, Fort Worth.

Oct. 30, 1991.

Rehearing Denied Dec. 17, 1991.

Cantey & Hanger, and Robert S. Travis, Perry J. Cockerell and M. Scott Stooksberry, Fort Worth, for appellants.

Shannon, Gracey, Ratliff & Miller, Janie L. Frank, David P. Cotten, Fort Worth, for appellee.

Before JOE SPURLOCK, II, HILL and DAY, JJ.

## OPINION

HILL, Justice.

E.J. Wimberly and Frances Wimberly appeal from a summary judgment declaring that a 1953 water contract and a 1955 letter amendment, a contract originally entered into between appellee, Lone Star Gas Company, and Ruth Shawver, a prior owner of the Wimberlys' property, are valid and enforceable against the Wimberlys. The judgment also declared that the contract is for a definite term—as long as Lone Star operates its Jacksboro compressor station—and that the Wimberlys and their heirs, successors, and assigns are bound by the contract. The court permanently enjoined the Wimberlys from stopping the flow of water from their property to Lone Star and from denying Lone Star access to two gas wells and to its pipelines on their property. The court did not award attorney's fees to Lone Star. The court overruled the Wimberlys' motion for partial summary judgment.

The Wimberlys contend in four points of error that the trial court erred by: (1) overruling their motion for partial summary judgment because the water contracts are not binding on the Wimberlys and are terminated; (2) overruling their special exception in which they urged that Lone Star had failed to allege how the Wimberlys could be obligated under the water contracts; (3) granting Lone Star's motion for summary judgment because there was a genuine issue of fact as to whether Lone Star breached the water documents; and (4) granting a permanent injunction against them because Lone Star's summary judgment proof did not establish its entitlement to summary judgment as a matter of law and because there was a genuine issue of fact as to whether the Wimberlys had committed a wrongful act.

We affirm because we hold that: (1) the trial court did not err in overruling the Wimberlys' motion for partial summary judgment since the evidence presented by the Wimberlys in support of their motion did not establish as a matter of law that they did not have a contract with Lone Star for the purchase of water from their property, nor did it establish as a matter of law that the provision of the contract between their predecessor in title and Lone Star relating to the duration of the contract was not also a part of any contract they might have with Lone Star; (2) the trial court did

not err in overruling the Wimberlys' special exception to Lone Star's pleading because the contract between Shawver, the prior owner, and Lone Star is a contract running with the land, and the Wimberlys did not plead that the contract's terms were unconscionable; (3) the trial court did not err in granting Lone Star's motion for summary judgment because the Wimberlys raised no fact issue as to Lone Star's breach of the contract by providing water to an on-site residence at the plant where the undisputed summary judgment evidence showed that water was needed for the residence, and the residence was necessary for the operation of the plant; and (4) the trial court did not err in granting a permanent injunction against the Wimberlys because the summary judgment evidence established as a matter of law that E.J. Wimberly had committed a wrongful act against Lone Star by blocking Lone Star's access to its wells without providing it keys.

In 1953, Lone Star contracted with Mrs. Ruth L. Shawver, a prior owner of the Wimberlys' property, to purchase water from her water well for use by Lone Star in connection with the operation of its Jacksboro compressor station plant. The term of the contract was to be for so long as Lone Star operated the plant. In 1955, Lone Star, due to decreased production from the well, drilled another water well on the property and in connection with the new well amended the contract by letter agreement.

The Wimberlys obtained Shawver's property in 1964. Before they purchased the property, E.J. Wimberly read the water contract, and for twenty-four years Lone Star and the Wimberlys performed the same obligations as those called for by the contract. The Wimberlys notified Lone Star in November 1988 that the contract was terminated and that Lone Star was not to take water from their property as of March 21, 1989. The Wimberlys based their right to terminate on their claim that the termination of the contract depended upon a contingent event, the moving or loss of the Jacksboro compressor station, rather than terminating at a specific time. The Wimberlys referred Lone Star to TEX.

BUS. & COM.CODE ANN. sec. 2.309(a), (b) & (c) (Vernon 1968).

The Wimberlys contend in point of error number one that the trial court erred by denying their motion for partial summary judgment seeking a declaratory judgment that the water contract had been terminated.

■ The Wimberlys urge that there has never been a contract between them and Lone Star and that they are not bound by any contract between Lone Star and Shawver because such a contract was personal and does not run with the land.

We must consider whether the Wimberlys established their right to the partial summary judgment by establishing that there exists no genuine issue of material fact and that they are entitled to judgment as a matter of law. *City of Houston v. Clear Creek Basin Authority*, 589 S.W.2d 671, 678 (Tex.1979).

We hold that the summary judgment evidence shows that the Wimberlys purchased the property with knowledge of the prior contract and that they performed for twenty-four years under its terms, allowing Lone Star to draw water from their land and accepting Lone Star's monthly payments. This evidence, rather than showing that there is no contract between the Wimberlys and Lone Star, strongly suggests the existence of an implied contract with their mutual assent shown by their conduct. Therefore, the summary judgment proof does not establish as a matter of law that the provision of the prior contract as to duration was not a part of the contract the Wimberlys had with Lone Star. Because we have held that the Wimberlys did not establish as a matter of law that they had no contract with Lone Star or, if they had one, that its duration varied from the Lone Star–Shawver contract, we need not consider in connection with this point of error the Wimberlys' contentions that the Lone Star–Shawver contract was not a contract running with the land. We overrule point of error number one.

The Wimberlys assert in point of error number two that the trial court erred by denying their special exception to Lone

Star's petition, which they allege fails to state a cause of action by failing to allege a basis for their liability under the contract with Shawver other than that the contract stated by its terms that it was binding on Shawver's heirs, successors, and assigns and the Wimberlys were successors in title to Shawver.

Lone Star did not plead any original contract with the Wimberlys, only that they are liable under the terms of its contract with Shawver, as her successors in title. We interpret the pleading as one that the Wimberlys are liable under the contract because the contract is one that runs with the land. In their argument under the preceding point of error the Wimberlys contend that the contract, which was a part of Lone Star's petition, is not a contract running with the land.

■ The Texas Supreme Court has held that a covenant runs with the land when it: (1) touches and concerns the land; (2) relates to a thing in existence or specifically binds the parties and their assigns; (3) is intended by the original parties to run with the land; and (4) when the successor to the burden has notice. *Inwood North Homeowners' Ass'n v. Harris,* 736 S.W.2d 632 (Tex.1987). There is nothing in Lone Star's amended petition or in the attached contracts that would show as a matter of law that the contracts did not run with the land. Consequently, the Wimberlys' special exception was not well taken.

The Wimberlys contend in their brief under the discussion of the preceding point of error that the covenant does not run with the land because: (1) courts have shown an antagonism toward the running of burdens or covenants and that this covenant conferred a benefit on Lone Star's plant but not on Shawver's land; (2) it is not credible that Shawver or Lone Star intended or understood that Lone Star would have the right to buy water from her land for an infinite time regardless of who owned the land; (3) it is unexpected, unfair, and unconscionable that the price fixed in 1953 should continue for generations to come; and (4) the water was supplied for the purpose of operating Lone Star's plant, an agreement to serve a commercial purpose on land affecting Lone Star's compressor plant and not one touching or concerning Shawver's land.

■ The Wimberlys contend that the covenant does not run with the land because it does not confer a benefit to their land, only to Lone Star's plant. We find no such requirement in the definition of a covenant running with the land. The definition merely requires that the covenant touch upon the land. In Shawver's case her promise to provide water from wells on her land touches upon the land. We see nothing in the contract that is inconsistent with the supreme court's definition of a contract running with the land.

■ The Wimberlys also urge that the covenant may not run with the land because it is not credible that Shawver intended or understood that Lone Star would have the right to buy water from her land for an infinite time regardless of who owned the land, and that it is unexpected, unfair, and unconscionable that the price set for the water in 1953 should continue for generations to come. We note again that the contract by its terms states that it is to be binding on the parties' heirs, successors, and assigns. Therefore, it would be credible that Shawver intended or understood that the contract meant what it said. If the Wimberlys wished to assert that the contract was unconscionable as to these provisions it may be that they could have made such an assertion as a defense. They provide us with no authority and we are not aware of any that would require that Lone Star plead that the contract is not unconscionable. We overrule point of error number two.

■ The Wimberlys urge in point of error number three that the trial court erred in granting summary judgment for Lone Star because there is a fact issue as to their allegation that Lone Star breached its contract by laying a water line for the use of employees who lived in a company cottage, whereas under the contracts the water was to be used only in connection with the operation of the plant. The undisputed summary judgment evidence shows that water is needed for the on-site residence and that maintenance of an on-site resi-

dence is necessary for the operation of the plant. Because the provision of water to the on-site residence was consistent with the contract, we hold that the summary judgment evidence raises no evidence of a breach of the contract by Lone Star. We overrule point of error number three.

■ The Wimberlys argue in point of error number four that the trial court erred in granting a permanent injunction by summary judgment against them because Lone Star's summary judgment proof did not establish entitlement to summary judgment as a matter of law, and there was a genuine issue of fact as to whether they committed a wrongful act.

Lone Star contended by affidavit that the Wimberlys denied it access to its gas wells located on the Wimberly property. The Wimberlys contend that their affidavits raised a fact issue as to whether they had committed such a wrongful act. Frances Wimberly stated in her affidavit that she had never physically locked out Lone Star or denied its representatives access to any gas or water wells and had never taken any action that would have kept Lone Star from gaining entry to her property. E.J. Wimberly stated in his affidavit that he had had problems with losing cattle due to theft. He acknowledged that he periodically changes locks on the chains at the entrance to his property because by doing so he can monitor who is entering the property. He said that when he received calls from Lone Star to obtain entry that he has immediately gone to the property to allow its representatives to enter. He stated that he had never denied Lone Star access to the gas wells on his property.

Despite E.J.'s conclusion that he never denied Lone Star access to the wells, the conclusion is negated by the affidavit when read as a whole. The Wimberlys contend that the affidavits raised a fact issue as to whether their action was an unreasonable interference with Lone Star's right to enter their property. They rely on the case of *Stout v. Christian*, 593 S.W.2d 146 (Tex. Civ.App.—Austin 1980, no writ). We find that case to be distinguishable. In that case the court found that where the use of an easement interfered with the running of cattle on the servient estate that there was

a fact issue as to whether the locking of a gate blocking the easement and providing the other party with a key was an unreasonable interference with the right to use the easement. *Id.* at 150–51. Also, the easement deed provided for closed gates and it was undisputed that keys were provided to those entitled to use the easement. *Id.* Although the Wimberlys may be entitled to use locked gates to protect their cattle in the event they provide a key to Lone Star, E.J.'s affidavit makes it apparent that he did not do so. We hold that his locking the gates without providing a key to Lone Star constituted a wrongful act as a matter of law. *See id.* at 149. We overrule point of error number four.

The judgment is affirmed.