**Kenneth Lee MONTFORT, Appellant,**

**v.**

**TREK RESOURCES, INC., Appellee.**

**No. 11–05–00001–CV.**

Court of Appeals of Texas, Eastland.

June 22, 2006.

---

---

Rick Dunbar, William M. Ucherek II, Ucherek Law Firm, P.C., Abilene, for appellant.

William H. Hoffmann, Jr., Eastland, for appellee.

Panel consists of WRIGHT, C.J., and McCALL, J., and STRANGE, J.

## OPINION

TERRY McCALL, Justice.

This case arises out of a dispute between Trek Resources, Inc. (the owner and operator of an oil and gas leasehold estate) and Kenneth Lee Montfort (the surface owner). Trek is also the owner of the underground water rights and freshwater gathering system on the subject property. Trek brought this action against Montfort seeking to permanently enjoin him from interfering with its leasehold operations. Trek also sought a declaratory judgment on a number of issues. In part, Trek requested a declaratory judgment that it had no obligation to furnish fresh water to Montfort. Montfort also sought injunctive and declaratory relief. After a bench trial, the trial court issued a permanent injunction enjoining Montfort from interfering with Trek's leasehold operations. The trial court also entered a judgment declaring, among other things, that Trek had no obligation to furnish fresh water to Montfort.

In three appellate issues, Montfort challenges the permanent injunction and the declaratory judgment and asserts that the trial court erred in denying his request for declaratory judgment. We find that the trial court did not abuse its discretion in issuing the permanent injunction. However, based on our finding that Trek has the obligation to furnish fresh water to Montfort, we modify the permanent injunction as set forth below, reverse the declaratory judgment, render judgment that Trek has the obligation to furnish fresh water to Montfort for use at his house and for the purpose of watering his livestock, and remand the issue of attorney's fees to the trial court for further consideration.

### Factual and Procedural Background

The dispute in this case arises from Trek's operation of the North Pioneer Unit in Eastland County, Texas. The North Pioneer Unit is an extensive secondary recovery oil field unit, consisting of about sixty-two producing oil wells, fifty-five saltwater injection wells, fifty-five freshwater wells, and "miles and miles" of associated flow lines. The water flood program was put into place in the unit about twenty years ago; and, in operating the unit, Trek injects about 420,000 gallons of fresh water each day. Montfort owns 653 surface acres within the unit, and there is one well per each six or seven acres of Montfort's surface estate.

Trek acquired its mineral interest in the North Pioneer Unit from Citation 1987 Investment Limited Partnership, effective July 2000. Citation had operated the North Pioneer Unit for a number of years; and, during its operation of the unit, Citation owned the mineral estate and the 653 surface acres currently owned by Montfort. On June 12, 2000, Montfort's predecessor-in-interest, Edward L. White, purchased the surface estate from Citation.

Citation executed a special warranty deed in connection with the sale of the surface acres to White. In the special warranty deed, Citation reserved and excepted from the conveyance title to the freshwater gathering system and to the underground water rights. As consideration for the deed, Citation agreed to furnish fresh water to the house on the subject property and to White for the purpose of watering his livestock. Trek purchased its mineral interest from Citation with notice of Citation's special warranty deed to White. Montfort acquired the surface estate from White on December 18, 2003.

On January 5, 2004, Trek filed an application for a temporary restraining order, temporary injunction, and permanent injunction, seeking to enjoin Montfort from interfering with its leasehold operations. Trek alleged that Montfort had interfered with its operations in a number of ways, including locking out Trek's pumpers and service companies from the property. The trial court entered a temporary restraining order. On January 9, 2004, Montfort filed his answer, counterclaim, declaratory judgment action, and action for injunctive relief. Thereafter, both parties filed additional pleadings seeking various injunctive and declaratory relief. On October 15, 2004, after four evidentiary hearings relating to the requests for injunctive relief and the trial in this case, the trial court entered its order for issuance of a permanent injunction and declaratory judgment and denying Trek's request for attorney's fees. The trial court entered findings of fact and conclusions of law in support of its judgment.

*The Trial Court's Permanent Injunction*

The trial court's permanent injunction ordered Montfort to desist and refrain from committing the following acts:

a. interfering or preventing [Trek], its agents, servants and/or employees from ingress and egress on, over and across [Montfort's] property or any adjoining properties on which [Trek] has a leasehold interest.

b. locking out [Trek] from [Montfort's] property or any other properties on which [Trek] has leasehold operations.

c. blocking in any way [Trek's] routes of ingress and egress on, over and across [Montfort's] property or any other properties on which [Trek] conducts leasehold operations and accesses from [Montfort's] property.

d. operating, or attempting to operate, manipulate, or attempting to manipulate, any of [Trek's] leasehold equipment and/or facilities, including, but not being limited to oil and gas leasehold facilities or fresh water facilities, including pipelines, valves, or any other facilities of [Trek] located on [Montfort's] property or any other property on which [Trek] conducts leasehold operations.

e. interfering in any way with [Trek's] transport of oil, gas, fresh water, produced water or any other substance within, onto or off of [Montfort's] property or within, onto or off of any other properties on which [Trek] conducts leasehold operations, including, but not being limited to, pipeline transports, truck transports or any other methods of transport utilized by [Trek] on their leasehold interests.

f. making frivolous and false complaints to the Texas Railroad Commission concerning [Trek's] leasehold operations on [Montfort's] property.

g. drilling, completing, pumping or attempting to drill, complete or pump or otherwise removing any subsurface water from any well bore on [Montfort's] estate[.]

h. interfering in any way with [Trek's] production of [Trek's] subsur-

face water on [Montfort's] surface estate[.]

i. access to any subsurface water well bore or equipment on or in said subsurface water well on [Montfort's] surface estate[.]

j. operating any equipment used for the purpose of removing or pumping subsurface water from [Montfort's] surface estate.

In his first appellate issue, Montfort argues that the trial court erred in granting Trek a permanent injunction.

*The Trial Court's Declaratory Judgment*

The trial court ordered the following in its declaratory judgment:

a. That [Trek] has no obligation to furnish [Montfort] fresh water to his house and livestock from [Trek's] fresh water facilities.

b. That [Trek] is the owner and holder of the fee title to the underground water rights on [Montfort's] surface estate and that [Montfort] has no right to the underground water on [his] surface estate.

c. That [Trek] owns the cattle guards on [Montfort's] property.

d. That [Trek] has a legal right to operate its fresh water facilities on [Montfort's] property.

e. That [Montfort] has no standing to make any claims or demands relative to the Unitization Agreement attached to [Montfort's] counterclaim as Exhibit "D."

f. That [Trek] has a legal right to utilize [Montfort's] property for the purpose of accessing [Trek's] leasehold interest on adjacent properties.

g. That [Trek] has no obligation to [Montfort] to plug [its] fresh water wells on [Montfort's] property.

In his second appellate issue, Montfort complains that the trial court erred in granting declaratory judgment in favor of Trek. Specifically, Montfort asserts that the trial court erred in declaring the matters set forth in Paragraphs a, b, c, and e above.

In his third appellate issue, Montfort asserts that the trial court erred in denying his petition for declaratory judgment. Specifically, Montfort contends that the trial court erred (1) in denying him the declaration that he is entitled to uninterrupted water furnished to the house and for livestock, (2) in denying him the declaration that Trek remove trash and debris from the property, and (3) in denying him the recovery of his attorney's fees.

*Permanent Injunction Issues*

Montfort's first issue challenges the issuance of the permanent injunction. Montfort asserts that there was no evidence or, alternatively, insufficient evidence to support the issuance of the injunction. An applicant for permanent injunctive relief must establish the following four elements: (1) the existence of a wrongful act; (2) the existence of imminent harm; (3) the existence of irreparable injury; and (4) the absence of an adequate remedy at law. *Jordan v. Landry's Seafood Rest., Inc.,* 89 S.W.3d 737, 742 (Tex.App.-Houston [1st Dist.] 2002, pet. denied) (op. on reh'g); *Swate v. Medina Community Hosp.,* 966 S.W.2d 693, 700 (Tex.App.-San Antonio 1998, pet. denied).

We review a trial court's ruling on applications for permanent injunctions for an abuse of discretion. *Operation Rescue-Nat'l v. Planned Parenthood of Houston and Southeast Tex., Inc.,* 975 S.W.2d 546, 560 (Tex.1998); *Stein v. Killough,* 53 S.W.3d 36, 40–41 (Tex.App.-San Antonio 2001, no. pet.). A trial court abuses its

discretion when it acts without reference to any guiding rules or principles. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex.1985). In a bench trial, the trial court, as fact-finder, is the sole judge of the credibility of the witnesses. *Sw. Bell Media, Inc. v. Lyles*, 825 S.W.2d 488, 493 (Tex.App.-Houston [1st Dist.] 1992, writ denied). In conducting our review, we consider the evidence in the light most favorable to the trial court's judgment. *Stein*, 53 S.W.3d at 41. In reviewing for an abuse of discretion, we do not review the issues under traditional legal and factual insufficiency standards. *Id.* Legal and factual insufficiency claims are not independent grounds of error; they are factors we weigh in determining whether the trial court abused its discretion. *Id.* If some evidence appears in the record that reasonably supports the trial court's decision, there is no abuse of discretion. *Id.* Thus, a trial court does not abuse its discretion when its decision is based on conflicting evidence. *Recon Exploration, Inc. v. Hodges*, 798 S.W.2d 848, 851 (Tex.App.-Dallas 1990, no writ). However, an appellate court will find an abuse of discretion if the record reflects that the trial court's findings necessary to sustain an order are not supported by some evidence. *Stein*, 53 S.W.3d at 41 (citing *Operation Rescue*, 975 S.W.2d at 560).

The trial court held four hearings relating to the parties' requests for temporary injunctive relief. The following witnesses testified at one or more of the hearings: (1) Conrad Mirochna, an operations manager and geologist for Trek; (2) Thomas (Tommy) Ames, a field foreman for Trek; (3) Bobby Schumann, a field inspector for the Texas Railroad Commission; (4) Jimmy Wilson, a licensed water well driller; and (5) Montfort. The parties stipulated to the use of the testimony and exhibits from the prior hearings as evidence at trial. The trial court approved the stipulation and considered the evidence from the hearings for the purposes of the trial, and the parties offered additional evidence at the trial.

Mirochna and Ames testified that Montfort had interfered with Trek's operation of the North Pioneer Unit in several respects. For example, Ames testified to the following: (1) that, on December 17, 2003, Montfort removed Trek's locks from three gates and then used his locks on the gates, thereby locking Trek's pumpers out of the property; (2) that, on another occasion, Montfort locked Trek's pumpers and service companies out of the property in an effort to prevent Trek from chemically treating two wells on the property; (3) that Montfort had interfered with Trek's operation of an adjacent lease—the Beggs's lease—by locking the gate in between his property and the Beggs's property; and (4) that, on another occasion, Montfort blocked Trek's entry into the Beggs's lease by blocking the gate with his car.

Trek presented evidence that Montfort made two complaints to the Texas Railroad Commission about Trek's Injection Well No. 409. In each complaint, Montfort claimed that there was pressure on the casing of the well. Mirochna and Ames testified that it is necessary to open the valve on the well to determine whether there is pressure on the casing. Ames said that opening a valve can be dangerous if there is pressure on the casing. Montfort denied that he opened the valve on the well. Schumann investigated one of Montfort's complaints for the Texas Railroad Commission. He did not find anything to substantiate Montfort's complaint. Scott Bates, an investigator for the Texas Railroad Commission, investigated Montfort's other complaint about the well. The evidence showed that Bates found nothing to substantiate Montfort's complaint.

Mirochna testified that Montfort opened a valve on Trek's freshwater facility for the purpose of filling up his stock tank. Mirochna testified that, under certain circumstances, opening the valve created the danger of a salt water spill. Montfort admitted that he opened the valve so that he could fill up his stock tank. Ames also testified that Montfort had a pump installed on a water well and then pumped water out onto the ground for a period of about twenty-four to twenty-seven hours.

While Montfort disputed much of the testimony of Mirochna and Ames, the trial court, as the sole judge of the credibility of the witnesses, was entitled to believe the testimony of Mirochna and Ames and to disbelieve the testimony of Montfort. *McGalliard v. Kuhlmann*, 722 S.W.2d 694, 697 (Tex.1986). In its findings of fact, the trial court found that Montfort had engaged in a number of wrongful acts interfering with Trek's leasehold operations, including the following:

(8)(b) On March 20, 2003, [Montfort] contacted the Texas Railroad Commission and complained that [Trek's] injection well # 409, located on [Montfort's] property and operated by [Trek], had pressure on the casing. The Texas Railroad Commission field inspector, Scott [Bates], investigated the complaint and found nothing to substantiate [Montfort's] claim. In order for [Montfort] to have determined whether or not there was pressure on the casing on [Trek's] injection well # 409, [Montfort] would have had to have opened a valve on [Trek's] injection well # 409. By opening [Trek's] valve on its leasehold facilities, [Montfort] was subjected to danger and [Trek] to liability.

(8)(c) On July 30, 2003, [Montfort] contacted the Texas Railroad Commission again to register his complaint that [Trek's] injection well # 409 had pressure on the casing. Texas Railroad Commission field inspector, Bobby Schumann, investigated [Montfort's] complaint and found nothing to substantiate [Montfort's] claim.

(8)(d) On December 13 and/or 14, 2003, [Montfort] and/or his agents, servants or employees acting under his direction, instruction, and/or control, opened a valve on [Trek's] fresh water leasehold facilities in order to flow water from [Trek's] facilities to [Montfort's] stock tank. This operation of [Trek's] fresh water leasehold facilities by [Montfort] was done without the knowledge of [Trek] and/or [Trek's] permission to operate said facilities. [Montfort's] unauthorized and unlawful operation of [Trek's] fresh water facilities subjected [Trek] to liability and [Montfort] to danger.

(8)(e) On December 17, 2003, [Montfort] removed and disposed of [Trek's] locks located on three gates on the perimeter of [Montfort's] property and used [Montfort's] locks to lock out [Trek's] pumpers from [Trek's] oil and gas leasehold on [Trek's] property.

(8)(f) On December 19, 2003, [Trek's] pumpers and service companies were locked out of [Montfort's] property by [Montfort] in an effort to prevent [Trek] from chemically treating two wells on [Montfort's property]. Further, [Montfort] attempted to prevent [Trek] from accessing its Beggs lease by installing a lock on the Beggs/Montfort gate. [Montfort] further interfered with [Trek's] leasehold operations on, over and across [Montfort's] property by interposing his truck across the Beggs/Montfort road and gate and further installing a larger lock and chain on the Beggs/Montfort gate. [Trek] was denied access to its Beggs lease as a result of [Montfort's] actions. As a re-

sult of [Montfort's] activities described above, [Trek] was required to halt all its operations on the Beggs No. 2 location, which is accessed through the Beggs/Montfort gate described above.

(8)(h) [Montfort] has made frivolous and false complaints to the Texas Railroad Commission concerning [Trek's] leasehold operations on [Montfort's] subject property.

The testimony of Mirochna, Ames, and Schumann supports the trial court's findings of fact. Mirochna and Ames testified that Montfort's interference with Trek's leasehold operations and equipment created potential dangers and that many dangers are inherent in the operation of an extensive unit. Montfort's interference with Trek's leasehold operations, either by denying Trek access to the leasehold property or by operating Trek's equipment, poses a real risk of harm to Trek and supports the trial court's finding of imminent harm. By locking Trek out of the property, Montfort denies Trek access to its wells and jeopardizes Trek's operations. For example, when Montfort locks Trek out of the property, Trek may not be able to access problem wells or other problems associated with the unit. If Montfort operates Trek's equipment, any number of dangers may arise, including a salt water spill.

 An irreparable injury occurs when the injury is of such a nature that the injured party cannot be adequately compensated for it in damages or the damages cannot be measured by any certain pecuniary standard. *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 204 (Tex.2002). A party has no adequate remedy at law when damages are incapable of calculation or the party to be enjoined is incapable of responding in damages. *See Recon Exploration*, 798 S.W.2d at 851. Trek's potential damages relating to future interference by

Montfort cannot be measured by any certain pecuniary standard. Therefore, the evidence supports the trial court's findings of an irreparable injury and the absence of an adequate remedy at law.

The trial court did not abuse its discretion in granting a permanent injunction. Therefore, the trial court did not err in granting the permanent injunction. However, because Paragraphs g, i, and j of the permanent injunction conflict, in part, with our ruling on the water issues presented in Montfort's second and third issues, we modify those paragraphs as set forth below. We sustain Montfort's first issue with respect to Paragraphs g, i, and j of the permanent injunction, and we overrule the remainder of Montfort's first issue.

*Declaratory Judgment Issues*

In his second issue, Montfort challenges four of the trial court's declarations: (1) that Trek has no obligation to furnish Montfort fresh water to his house and livestock from Trek's fresh water facilities; (2) that Trek is the owner and holder of the fee title to the underground water rights and that Montfort has no right to the underground water on his surface estate; (3) that Trek owns the cattle guards on Montfort's property; and (4) that Montfort has no standing to make any claims or demands relative to the Unitization Agreement attached to Montfort's counterclaim as Exhibit "D." With respect to item number (2) above, Montfort agrees that Trek owns and holds the fee title to the underground water rights. However, Montfort asserts that he has a right to use the underground water.

In his third issue, Montfort complains that the trial court erred in denying a declaratory judgment (1) that Trek must furnish water to his house and for the purpose of watering his livestock and (2) that Trek must remove debris and trash

from his property. Montfort also asserts that the trial court erred in failing to award him attorney's fees on his declaratory judgment claim.

 We review declaratory judgments under the same standards as other judgments and decrees. TEX. CIV. PRAC. & REM.CODE ANN. § 37.010 (Vernon 1997); *Guthery v. Taylor,* 112 S.W.3d 715, 720 (Tex.App.-Houston [14th Dist.] 2003, no pet.); *Roberts v. Squyres,* 4 S.W.3d 485, 488 (Tex.App.-Beaumont 1999, pet. denied). We look·to the procedure used to resolve the issue at trial to determine the standard of review on appeal. *Guthery,* 112 S.W.3d at 720; *Roberts,* 4 S.W.3d at 488. Here, the trial court determined the declaratory judgment issue after a bench trial. Therefore, we apply a sufficiency of the evidence review to the trial court's factual findings and review its conclusions of law de novo. *See Black v. City of Killeen,* 78 S.W.3d 686, 691 (Tex.App.-Austin 2002, pet. denied).

*Fresh Water Issues*

Citation executed a special warranty deed when it sold the surface estate to White (Montfort's predecessor-in-interest). In the deed, Citation reserved for itself and its successors and assigns title to the fresh water gathering system and to the underground water rights. The deed contained the following consideration provision:

As a material part of the consideration for this Deed, Grantor and Grantee agree as follows:

(1) Upon the termination of the existing oil and gas leases, Grantor or its successors and assigns shall relinquish title to the following: cemented pipe racks, metal storage buildings (3), and office building (1).

(2) Only for so long as the fresh water gathering system and Grantor's water

wells remain operational, Grantor or its successors and assigns shall furnish fresh water to the house and to Grantee for the purpose of watering Grantee's livestock.

(3) Grantee shall have the right to drill fresh water wells and utilize any water produced from such wells for Grantee's purposes.

(4) Upon the termination of the existing oil and gas leases, Grantor or its successors and assigns shall relinquish title to the fresh water rights and the fresh water gathering system.

(5) Title to earthen stock ponds shall be conveyed to Grantee.

 Montfort argues that, under the special warranty deed, the grantor's obligation to furnish fresh water to the house and to the grantee for the purpose of watering the grantee's livestock is a covenant running with the land. Therefore, Montfort asserts that Trek has the obligation to furnish fresh water to his house and to him for the purpose of watering his livestock. Trek argues that Citation and White intended the obligation to furnish water to be a personal covenant solely benefiting White, as opposed to a covenant running with the land. In Paragraph (2) above, Citation and White provided that the "[g]rantor or its successors and assigns" shall furnish water to "[g]rantee." However, they did not include "successors and assigns" language with respect to the grantee. Trek asserts that, in the absence of "successors and assigns" language with respect to the grantee, the obligation of "[Citation] or its successors and assigns" to furnish water did not flow to White's successors and assigns. Trek also argues that the obligation to furnish water was not a covenant running with the land because the obligation did not confer a benefit on Citation, the grantor.

The court's primary concern in construing a deed is to ascertain the true intent of the parties as expressed in the instrument. *See Forbau v. Aetna Life Ins. Co.,* 876 S.W.2d 132, 133 (Tex.1994); *Luckel v. White,* 819 S.W.2d 459, 461 (Tex. 1991). The construction of an unambiguous deed is a question of law to be resolved by the court. *Altman v. Blake,* 712 S.W.2d 117, 118 (Tex.1986). When construing such a deed, the intent of the parties is to be determined from the express language found within the four corners of the document. *Luckel,* 819 S.W.2d at 461. All parts of the deed are to be harmonized, construing the instrument to give effect to all of its provisions. *Id.* at 462; *Marker v. Garcia,* 185 S.W.3d 21, 29 (Tex.App.-San Antonio 2005, no pet.).

In Texas, a covenant runs with the land if (1) it touches and concerns the land, (2) it relates to a thing in existence or specifically binds the parties and their assigns, (3) it is intended by the original parties to run with the land, and (4) the successor to the burden has notice. *Inwood N. Homeowners' Ass'n v. Harris,* 736 S.W.2d 632, 635 (Tex.1987). Covenants that run with the land bind the heirs and assigns of the covenanting parties, while personal covenants do not. *Tarrant Appraisal Dist. v. Colonial Country Club,* 767 S.W.2d 230, 235 (Tex.App.-Fort Worth 1989, writ denied).

In *Wimberly v. Lone Star Gas Co.,* 818 S.W.2d 868, 871 (Tex.App.-Fort Worth 1991, pet. denied), the court held that a landowner's promise to provide water from wells on the land touched upon the land and constituted a covenant running with the land. Although no Texas case has stated a general rule with respect to covenants to supply or furnish water, case law from other jurisdictions establishes that covenants to supply or furnish water generally run with the land. *See Camenisch v. City of Stanford,* 140 S.W.3d 1, 5 (Ky.Ct. App.2003); *see also* 20 Am.Jur.2d *Covenants, Conditions, and Restrictions* (1995).

Citation's covenant to furnish fresh water satisfied the first two elements of a covenant running with the land. First, the covenant to furnish water touched and concerned the land. *Wimberly,* 818 S.W.2d at 871. Second, the water and water gathering system were in existence when Citation provided the special warranty deed to White. The evidence established that Trek had notice of Citation's special warranty deed to White and that, therefore, Trek had notice of Citation's obligation to furnish water. Because Trek had notice of the burden to furnish water, the evidence established the fourth element of a covenant running with the land.

The issue is whether Citation and White intended Citation's covenant to furnish water to run with the land. Trek argues that they did not intend the covenant to run with the land because they did not provide that the covenant flowed to the "successors and assigns" of the grantee. However, while the use of terminology such as "successors and assigns" is helpful in determining intent, the use of such terminology is not dispositive of the issue, and an obligation intended to run with the land can be created without such language. *Musgrave v. Brookhaven Lake Prop. Owners Ass'n,* 990 S.W.2d 386, 395 (Tex.App.-Texarkana 1999, pet. denied).

Although Citation and Trek did not use the words "successors and assigns" with respect to the grantee, the provisions in the special warranty deed demonstrate that they intended the obligation to furnish water to run with the land. In Paragraph (2) above, Citation agreed to furnish fresh water to the house and to grantee for the purpose of watering grantee's livestock. Citation and White did not include language limiting Citation's obligation to fur-

nish water to the house to the time period in which White lived in the house. The failure to include limiting language indicates an intent for the obligation to last longer than White's tenure in the house. In Paragraph (4) above, the parties provided that, upon the termination of the existing oil and gas leases, Citation or its successors and assigns shall relinquish title to the fresh water rights and the fresh water gathering system. Paragraph (4) does not include language limiting Citation's obligation to relinquish title to the water rights to White. Citation and White would have contemplated that the leases could remain in effect for longer than White's ownership of the surface estate. Because the leases could have remained in effect for longer than White's ownership of the surface estate, Paragraph (4) would be rendered meaningless if Citation's agreement to relinquish title to the fresh water rights were limited to White. In Paragraph (5) above, Citation agreed to convey title to the stock ponds to White. The transfer of title to the stock ponds indicates a lasting use of water by the surface owner and his successors.

The use of water is a necessity for a surface owner. If Citation had limited its obligation to furnish water only to White, then White's ability to sell the property could have been severely restricted. Viewing the deed in its entirety, we find that Citation and White intended Citation's obligation to furnish fresh water to run with the land. The evidence satisfied the four elements for a covenant running with the land.

■ Trek cites *Beckham v. Ward County Irr. Dist. No. 1,* 278 S.W. 316, 317 (Tex.Civ.App.-El Paso 1925, writ ref'd), and *Lakewood Heights Co. v. McCuistion,* 226 S.W. 1109, 1110 (Tex.Civ.App.-Dallas 1921, writ ref'd), for the following proposition:

Those covenants which are held to run with the land and inure to the benefit of the assignee[,] are such as generally affected the land itself and conferred a benefit on the grantor.

Trek contends that Citation's covenant to furnish water does not run with the land because it does not confer a benefit on the grantor, Citation. As in *Wimberly,* we find no such requirement for a covenant running with the land. *Wimberly,* 818 S.W.2d at 871. The definition for a covenant running with the land merely requires "that the covenant touch upon the land." *Id.*

Because Citation's covenant to furnish fresh water runs with the land, the trial court erred in concluding and in granting declaratory judgment that Trek has no obligation to furnish Montfort fresh water to his house and for the purpose of watering Montfort's livestock. The trial court also erred in denying a declaratory judgment that Trek must furnish water to Montfort in accordance with Paragraph (2) above of Citation's special warranty deed to White. Under Paragraph (3) of the special warranty deed, Montfort has the right to drill fresh water wells and utilize any water produced from such wells for his purposes. Therefore, we sustain Montfort's second and third issues to the extent that Montfort challenges the trial court's ruling on Trek's obligation to furnish fresh water under the terms of Citation's special warranty deed to White.

*The Cattle Guards*

■ The trial court declared that Trek owns the cattle guards on Montfort's property. Trek contends that it owns the cattle guards by virtue of the following reservation provision in Citation's special warranty deed to White:

[Citation] RESERVES AND RETAINS for itself and its successors and

assigns all of [Citation's] undivided interest in and to all tangible personal property, equipment, fixtures, improvements, easements, permits, licenses, servitudes and other appurtenances including, but not by way of limitation, all wells, injection wells, salt water disposal facilities, well heads, casing, tubing, pumps, motors, gauges, valves, heaters, treaters, gathering lines, flow lines, gas lines, water lines, tanks, boilers, separators, buildings, platforms, machinery, tools, treating equipment, compressors, and other equipment, pipelines, power lines, and other appurtenances, situated upon the Subject Lands or any land or lands pooled or unitized therewith or used or obtained in connection with the production, treating, storing or transportation of oil, gas and other hydrocarbons or minerals therefrom.

The record contains limited testimony regarding ownership of the cattle guards. Mirochna considered that Trek owned the cattle guards because he did not believe that Citation conveyed the cattle guards to White.

The record does not contain any evidence to support a finding that Trek owned the cattle guards. First, Citation did not specifically reserve the cattle guards in the reservation paragraph. Second, the items specifically listed in the reservation paragraph relate to the production of oil and gas, and the evidence in the record does not establish that the cattle guards related in any way to the production of oil and gas. The trial court erred in declaring that Trek owned the cattle guards on Montfort's property. We sustain Montfort's second issue to the extent that Montfort complains about the trial court's ruling on the ownership of the cattle guards.

*The Unitization Agreement*

The trial court determined that Montfort did not have standing to make any claims or demands under the unit agreement for the North Pioneer Unit. Montfort attached certain pages from the unit agreement as Exhibit "D" to his counterclaim and introduced a copy of the unit agreement in its entirety as Exhibit "2" at trial. The effective date of the unit agreement was October 28, 1980. Exhibit "2" was signed on behalf of Cordova Resources, Inc., the unit operator and working interest owner. Exhibit "2" does not contain signatures from any other parties to the unit agreement.

The evidence established that Montfort was not a party to the unit agreement. He did not own any mineral interests in the North Pioneer Unit. The parties to the unit agreement were working interest owners and royalty owners in the unit. The evidence did not demonstrate how Montfort, a surface owner, would have standing to assert claims under the unit agreement. Montfort did not show that he was a successor or assign of any party to the unit agreement. Based on the evidence, the trial court did not err in declaring that Montfort did not have standing to make claims or demands under the unit agreement. Additionally, the record does not contain any evidence that Trek breached the unit agreement. We overrule Montfort's second issue to the extent that he challenges the trial court's ruling on the standing issue.

*Trash and Debris on Montfort's Surface Estate*

Montfort argues that the trial court erred in denying a declaratory judgment requiring that Trek remove trash and debris from his surface estate. In Texas, the mineral estate is the dominant estate. *Ball v. Dillard,* 602 S.W.2d 521, 523 (Tex.1980); *Getty Oil Co. v. Jones,* 470

S.W.2d 618, 621 (Tex.1971). The mineral owner and its lessee have the right to use as much of the premises as is reasonably necessary to produce and remove the minerals. *Getty Oil Co.*, 470 S.W.2d at 621; *Delhi Gas Pipeline Corp. v. Dixon*, 737 S.W.2d 96, 97 (Tex.App.-Eastland 1987, writ denied).

Montfort and Trek offered conflicting evidence on this issue. Montfort testified about the trash and debris on the property and presented pictures showing the condition of the property. Trek presented testimony that it cleaned up trash and debris as it went on the property. Mirochna testified that Trek had performed a lot of cleanup on the property since acquiring its mineral leasehold interest from Citation.

Montfort did not establish that Trek used more of the premises than was reasonably necessary to produce the minerals. Given the conflicting evidence on the issue, we find that the trial court did not err in denying Montfort a declaratory judgment requiring Trek to remove trash and debris from his surface estate. We overrule Montfort's third issue to the extent that he complains of the trial court's ruling on this issue.

### Attorney's Fees

Montfort complains that the trial court erred in denying his request for attorney's fees pursuant to the Texas Declaratory Judgment Act (the Act). The Act allows a trial court to grant reasonable and necessary attorney's fees as are equitable and just. TEX. CIV. PRAC. & REM.CODE ANN. § 37.009 (Vernon 1997). The grant or denial of attorney's fees in a declaratory judgment action lies within the discretion of the trial court, and its judgment will not be reversed on appeal absent a clear showing that it abused that discretion. *Oake v. Collin County*, 692 S.W.2d 454, 455 (Tex. 1985). In the exercise of its discretion, the trial court may award attorney's fees to the prevailing party, may decline to award attorney's fees to either party, or may award attorney's fees to the nonprevailing party. *Sava Gumarska in Kemijska Industria D.D. v. Advanced Polymer Sci., Inc.*, 128 S.W.3d 304, 323–24 (Tex.App.-Dallas 2004, no pet.).

In this case, the trial court did not award attorney's fees to either party. The trial court acted within its discretion in denying attorney's fees to the parties. However, in light of our rulings on the declaratory judgment issues in this opinion, we remand this cause to the trial court for it to consider and exercise its discretion on the amount of attorney's fees, if any, which should be awarded to the parties in this case. *Barshop v. Medina County Underground Water Conservation Dist.*, 925 S.W.2d 618, 637–38 (Tex.1996).

### This Court's Ruling

We reverse Paragraphs a, b, and c of the trial court's declaratory judgment (dealing with the water issue and cattle guards issue) and delete them from the judgment. We render declaratory judgment and replace Paragraphs a, b, and c of the trial court's declaratory judgment as follows:

a. That Plaintiff, TREK RESOURCES, INC., is the owner and holder of the fee title to the underground water rights.

b. That, under the terms of Citation's Special Warranty Deed to Edward L. White, executed on June 12, 2000, (1) Plaintiff, TREK RESOURCES, INC., has the obligation to furnish fresh water to the house and to Defendant for the purpose of watering his livestock and (2) Defendant has the right to drill fresh water wells on his surface estate and utilize any water produced from such wells for such purposes.

c. That Defendant owns the cattle guards on his property.

We affirm the remainder of the trial court's declaratory judgment.

We modify the trial court's permanent injunction by deleting Paragraphs g, i, and j of the permanent injunction and replacing them with the following paragraphs:

g. drilling, completing, pumping or attempting to drill, complete or pump or otherwise removing any subsurface water from any well bore owned by Plaintiff on Defendant's surface estate.

i. accessing any of Plaintiff's subsurface water well bores or equipment on or in said subsurface water wells on Defendant's surface estate.

j. operating any of Plaintiff's equipment used for the purpose of removing or pumping subsurface water from Defendant's surface estate.

We affirm the remainder of the permanent injunction.

We remand the issue of attorney's fees to the trial court for further consideration.