02-11-244-CV









 
 
 
 
 
 
 
 
 
 
 
 
 
 COURT OF APPEALS
 SECOND DISTRICT OF TEXAS
 FORT WORTH
  
 
 


 

 

NO. 02-11-00244-CV

 

 


 
 
 Barnes S.W. Plaza, LLC
 
 
  
 
 
 APPELLANT
 
 
 
 
  
 V.
  
 
 
 
 
 WF Retail Investments LLC
 
 
  
 
 
 APPELLEE
 
 


 

 

----------

FROM THE 89th
District Court OF Wichita COUNTY

----------

MEMORANDUM
OPINION[1]

----------

I.  Introduction

          Appellant
Barnes S.W. Plaza, LLC (Barnes) appeals the trial court’s final judgment, which
incorporates its grant of Appellee WF Retail Investments, LLC’s (WF Retail)
motion for partial summary judgment.  In its sole issue, Barnes contends that
the trial court erred by finding that a restrictive covenant did not apply to
the property owned by WF Retail.  We will affirm.

II.  Background

          WF
Retail is the owner of property located in Wichita County (Parcel I) which
includes a vacant building that was once used as a Safeway grocery store.  Barnes
is the owner of property located adjacent to and west of Parcel I (Parcel II).

          Sometime
after acquiring Parcel I, WF Retail applied for a building permit for
construction in order to renovate the vacant building on its property for use as
a nightclub.  After learning of WF Retail’s plans, Barnes filed suit against WF
Retail in an effort to restrain WF Retail from using Parcel I for such
purposes.  In support of its claim for injunctive and declaratory relief,
Barnes relied on a restrictive covenant contained in an agreement between the
previous owners of the respective properties, arguing that the covenant
prohibited WF Retail from using the property for a nightclub business.[2]

          In
response to Barnes’s suit, WF Retail filed a motion for partial summary
judgment, arguing that it was entitled to judgment as a matter of law because the
intended use for a nightclub was not prohibited on Parcel I.  The trial
court granted the motion and later entered its final judgment, finding that the
restrictive covenant at issue provides in clear and unambiguous language that Parcel II
is burdened with the restriction but that the same restriction does not apply
to Parcel I.  Thus, the trial court concluded, WF Retail is not prohibited
by said restrictive covenants from any use which might involve a nightclub on Parcel I.[3]

          The
subject agreement, titled “Easements with Covenants and Restrictions Affecting
Land (ECR),” was executed by Barnes’s predecessor in title, J. Phillips
Cunningham (Developer), and by WF Retail’s predecessor in title, Safeway
Holdings, Inc. (Safeway).  In relevant part, the agreement provides:

C.      TERMS

 

. . .

 

2.       Buildings.

 

. . .

 

          (b)     Separation
of uses:  Developer
recognizes Safeway’s customers’ need for adequate parking facilities in close
proximity to its Parcel I premises, and the importance of protecting such
parking facilities against unreasonable or undue encroachment which is likely
to result from long-term parking by patrons or employees of certain types of
business establishments.  Developer further recognizes Safeway’s interest in
not having tenants occupying space in close proximity to the Parcel I
premises who create or cause excessive noise, litter or odor.  To safeguard
Safeway’s interest in a clean, quiet and odor free environment and adequate
parking for its customers, Developer covenants and agrees that it shall not
permit the use or operation of any portion of Parcel II, within 250 feet
of any exterior building wall of any Parcel I building for a restaurant
(fastfood or sit-down) or entertainment or recreational activities such as, but
not limited to, bowling alleys, theaters, carnivals or other places of public
or private amusement.

 

. . .

 

11.     Rights of Successors.  The
easements, restrictions, benefits, and obligations hereunder shall create mutual
benefits and servitudes upon Parcels I and II running with the land.  This
agreement shall bind and inure to the benefit of the parties hereto, their
respective heirs, personal representatives, tenants, successors, and/or
assigns.  The singular number includes the plural and any gender includes all
other genders.

 

          The
parties do not dispute that both WF Retail and Barnes, as successors in title
to the original drafters, are bound by the subject agreement or that the subject
restriction’s terms include the use of the property for a nightclub business.  Thus,
Barnes’s sole issue on appeal is whether the restrictive covenant prohibiting
the use of property for a nightclub applies to Parcel I.[4]

III.  Discussion

          Barnes
contends that the trial court erred by granting summary judgment in favor of WF
Retail based on the trial court’s finding that a restrictive covenant did not
apply to Parcel I.  Specifically, Barnes claims that “[t]here was an
intentional mutuality between the parties as to the creation, duration and
enforcement of the subject restrictive covenant” and that therefore the
restriction applies to both Parcel I and Parcel II.  We disagree.

A.      Summary
Judgment Standard of Review

          In
a summary judgment case, we must decide whether the movant met the summary
judgment burden by establishing that no genuine issue of material fact exists
and that the movant is entitled to judgment as a matter of law.  Tex. R. Civ.
P. 166a(c); Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding,
289 S.W.3d 844, 848 (Tex. 2009).  We review a summary judgment de novo.  Travelers
Ins. Co. v. Joachim, 315 S.W.3d 860, 862 (Tex. 2010).

          We
take as true all evidence favorable to the nonmovant, and we indulge every
reasonable inference and resolve any doubts in the nonmovant’s favor.  20801,
Inc. v. Parker, 249 S.W.3d 392, 399 (Tex. 2008); Provident Life &
Accident Ins. Co. v. Knott, 128 S.W.3d 211, 215 (Tex. 2003).  We
consider the evidence presented in the light most favorable to the nonmovant,
crediting evidence favorable to the nonmovant if reasonable jurors could and
disregarding evidence contrary to the nonmovant unless reasonable jurors could
not.  Mann Frankfort Stein & Lipp Advisors, Inc., 289 S.W.3d at 848.
 A defendant who conclusively negates at least one essential element of a cause
of action is entitled to summary judgment on that claim.  Frost Nat’l Bank
v. Fernandez, 315 S.W.3d 494, 508 (Tex. 2010).

B.      Enforcement and Interpretation of Restrictive
Covenants

          In
order to claim or enforce a restrictive covenant on another’s land, the party
claiming the restriction must show that it was for the benefit of its land.  McCart
v. Cain, 416 S.W.2d 463, 465 (Tex. Civ. App.—Fort Worth 1967, writ ref’d
n.r.e.).  In every case where parties seek to enforce a restrictive covenant,
the burden of proof is upon them to establish that the defendant’s land was in
fact burdened with such restriction and that such restriction was imposed upon the
defendant’s land for the benefit of the land owned by the plaintiff.  Webb
v. Voga, 316 S.W.3d 809, 813 (Tex. App.—Dallas 2010, no pet.).  In this
case, the trial court interpreted the restrictive covenant at issue to benefit
WF Retail’s land and not Barnes’s land.

          We
review a trial court’s interpretation of a restrictive covenant de novo.  Leake
v. Campbell, 352 S.W.3d 180, 184 (Tex. App.—Fort Worth 2011, no pet.).  For
a court to construe a covenant as a matter of law, it must be unambiguous.  See
Columbia Gas Transmission Corp. v. New Ulm Gas, Ltd., 940 S.W.2d 587, 589
(Tex. 1996).  A covenant is unambiguous as a matter of law if it can be
given a definite or certain legal meaning.  Pilarcik v. Emmons, 966
S.W.2d 474, 478 (Tex. 1998); Leake, 352 S.W.3d at 184.  Mere
disagreement over the interpretation of a restrictive covenant does not render
it ambiguous.  Leake, 352 S.W.3d at 184.

          We
construe restrictive covenants in accordance with general rules of contract
construction.  Pilarcik, 966 S.W.2d at 478; Leake, 352 S.W.3d at
184.  As when interpreting any contract, the court’s primary task is to
determine the drafter’s intent from the instrument’s language.  Wilmoth v.
Wilcox, 734 S.W.2d 656, 658 (Tex. 1987).  In ascertaining the drafter’s
intent, we must examine the covenant as a whole in light of the circumstances
present when the covenant was made.  Pilarcik, 966 S.W.2d at 478.  Words
used in a restrictive covenant may not be enlarged, extended, stretched, or changed
by construction; words and phrases used in the covenant must be given their
commonly accepted meaning.  Wilmoth, 734 S.W.2d at 657–58; Dyegard
Land P’ship v. Hoover, 39 S.W.3d 300, 308 (Tex. App.—Fort Worth 2001, no
pet.).  All doubts must be resolved in favor of the free and
unrestricted use of the premises, and the restrictive clause must be construed
strictly against the party seeking to enforce it.  Wilmoth, 734 S.W.2d
at 657–58; Dyegard, 39 S.W.3d at 308–09.  Finally, an unambiguous restrictive
covenant should be liberally construed to give effect to its purpose and
intent.  Tex. Prop. Code Ann. § 202.003(a) (West 2007); Leake, 352
S.W.3d at 184.

C.      Analysis

          The
restrictive covenant at issue appears to be written solely for the benefit and
in the interest of WF Retail’s predecessor in title—Safeway.  In the paragraph
regarding prohibited uses, Barnes’s predecessor in title—Developer—is the only
party undertaking any obligation to refrain from using its parcel for
entertainment or recreational activities; the covenant states that “Developer
covenants and agrees that it shall not permit the use or operation of any
portion of Parcel II . . . for . . . entertainment
or recreational activities. . . .” (emphasis added).  According
to the commonly accepted meaning of the covenant’s language, Safeway is the
beneficiary of Developer’s promise not to use its specifically named
parcel—Parcel II—for uses that would include a nightclub business.

          Further,
the covenant at issue clarifies the drafters’ intent to benefit Safeway by
stating the purpose of Developer’s promise not to use its property for
entertainment or recreational activities.  The pertinent section of the
agreement emphasizes that it is only Safeway’s interest that is being
recognized and that the covenant prohibiting use of the property for
entertainment or recreational activities was made in order to safeguard Safeway’s
interests in maintaining an environment that would be agreeable to Safeway’s
customers and beneficial to Safeway’s grocery store business.  Being Safeway’s
successor in title, WF Retail is entitled to the same interests under the
covenant’s terms.  But the covenant makes no mention of Developer’s interest or
of any mutuality in the promise not to use the property for entertainment or
recreational activities.  Thus, the covenant unambiguously imposes a unilateral
obligation on Developer and its successors.

          Barnes
seems to suggest that the “Rights of Successors” section near the end of the
agreement creates a mutual obligation for every covenant in the
agreement, including the covenant at issue.  But this portion of the agreement appears
to merely demonstrate the drafters’ intent that the covenants in the agreement
were to run with the land, thereby obligating subsequent owners of each parcel.[5]
 It therefore does not appear to create a catch-all provision imposing a mutual
obligation with respect to every covenant.  Thus, the restrictive covenant at
issue appears to have a definite or certain meaning, and it is therefore
unambiguous as a matter of law.

          Because
the language of the agreement demonstrates that the covenant prohibiting use of
the property for a nightclub was intended for the benefit of WF Retail’s
predecessor in title and to assign an obligation solely to the owner of Parcel II,
we agree with the trial court’s conclusion that the restriction at issue does
not apply to Parcel I, and WF Retail is not prohibited from using its
property for a nightclub business.

          Barnes
also argues that both parcels are subject to the deed restrictions on a mutual
basis under the doctrine of implied reciprocal negative easements.  But the
doctrine of implied reciprocal negative easements applies when an owner of real
property subdivides the property into lots and sells a substantial number of
those lots with restrictive covenants designed to further the owner’s general
plan or scheme of development.  Evans v. Pollock, 796 S.W.2d 465, 466
(Tex. 1990).  Here, there is no evidence that the subject parcels resulted from
a prior subdivision or that a substantial number of lots contain similar
restrictive covenants that further a general plan or scheme of development, and
therefore the doctrine of implied reciprocal negative easements does not apply
to this case.  Consequently, we maintain our conclusion that the covenant
prohibiting use of the property for entertainment or recreational activities
does not apply to Parcel I.

          Thus, because we
conclude that the restrictive covenant at issue does not apply to Parcel I,
Barnes has failed to create a genuine issue of material fact, and WF Retail was
entitled to judgment as a matter of law.  Accordingly, we hold that the trial
court did not err by granting summary judgment in favor of WF Retail.

IV.  Conclusion

          Having
overruled Barnes’s sole issue on appeal, we affirm the trial court’s judgment.

 

 

BILL MEIER
JUSTICE

 

PANEL:  LIVINGSTON, C.J.; DAUPHINOT and MEIER, JJ.

 

DELIVERED: 
August 30, 2012









[1]See Tex. R. App. P. 47.4.





[2]In its original petition,
Barnes also argued that WF Retail’s intended use would violate city code by
requiring more parking spaces than available, which would constitute a
substantial breach of the restrictive covenant.  But on appeal, Barnes merely
alludes to this argument in a paragraph contained within his overall issue of
whether the subject restriction was intended to burden Parcel I as well as
Parcel II.  In its brief, however, WF Retail provides an argument that the
intended use would not violate city code because there is actually a surplus of
parking spaces necessary to meet the city code requirements.  To the extent
that Barnes may have attempted to raise this subissue on appeal, because he
provides us with no authority or analysis as a guide, the issue is
insufficiently briefed, and we will not address it.  See Fredonia State Bank
v. Gen. Am. Life Ins. Co., 881 S.W.2d 279, 284–85 (Tex. 1994) (appellate
courts have discretion to waive argument due to inadequate briefing); Maranatha
Temple, Inc. v. Enter. Prods. Co., 893 S.W.2d 92, 106 (Tex. App.—Houston
[1st Dist.] 1994, writ denied) (declining to perform independent review when
appellant failed to provide argument sufficient to make appellate complaint
viable).





[3]Although
not at issue in this case, the trial court also concluded in its final judgment
that the mutual parking easements in the agreement are not violated by WF
Retail’s proposed use of the property.





[4]See supra note 2,
at 2.





[5]A restrictive covenant may
bind a successor to a burdened piece of land if the covenant runs with the land.
 Raman Chandler Props., L.C. v. Caldwell’s Creek Homeowners Ass’n, Inc.,
178 S.W.3d 384, 391 (Tex. App.—Fort Worth 2005, pet. denied).  A requirement to
establish that a covenant runs with the land is that the original parties to
the covenant must intend it to run with the land.  Inwood N. Homeowners’
Ass’n, Inc. v. Harris, 736 S.W.2d 632, 635 (Tex. 1987).  This intent may be
evidenced by language in the covenant agreement stating that the obligations
therein are to “run with the land” or that the covenants bind the drafters’
“successors and assigns.”  See Montfort v. Trek Res., Inc., 198 S.W.3d
344, 355 (Tex. App.—Eastland 2006, no pet.); Raman Chandler Props., L.C.,
178 S.W.3d at 391.  The question of whether a covenant runs with the
land goes to a successor’s right to enforce the covenant.  See Voice of
Cornerstone Church Corp. v. Pizza Prop. Partners, 160 S.W.3d 657, 666 (Tex.
App.—Austin 2005, no pet.).  Because the parties in this case do not dispute
the issue, we assume without deciding that the covenant runs with the land and
that Barnes may enforce the agreement as a whole.  The only issue we must
resolve is whether the restrictive covenant prohibiting use for entertainment
and recreational activities actually burdens WF Retail’s property.