Opinion filed June 22, 2006












 
 
  
 
 







 
 
  
 
 




Opinion filed June 22, 2006

 

 

 

 

 

 

                                                                        In The

                                                                              

    Eleventh Court of Appeals

                                                                   __________

 

                                                          No. 11-05-00001-CV 

                                                    __________

 

                              KENNETH
LEE MONTFORT, Appellant

 

                                                             V.

 

                                  TREK
RESOURCES, INC., Appellee

 



 

                                          On
Appeal from the 91st District Court

 

                                                        Eastland
County, Texas

 

                                             Trial
Court Cause No. CV-04-39,508

 



 

                                                                   O
P I N I O N








This case arises out of a dispute between Trek
Resources, Inc. (the owner and operator of an oil and gas leasehold estate) and
Kenneth Lee Montfort (the surface owner). 
Trek is also the owner of the underground water rights and freshwater
gathering system on the subject property. 
Trek brought this action against Montfort seeking to permanently enjoin
him from interfering with its leasehold operations.  Trek also sought a declaratory judgment on a
number of issues.  In part, Trek
requested a declaratory judgment that it had no obligation to furnish fresh
water to Montfort.  Montfort also sought
injunctive and declaratory relief.  After
a bench trial, the trial court issued a permanent injunction enjoining Montfort
from interfering with Trek=s
leasehold operations.  The trial court
also entered a judgment declaring, among other things, that Trek had no
obligation to furnish fresh water to Montfort.

In three appellate issues, Montfort challenges the
permanent injunction and the declaratory judgment and asserts that the trial
court erred in denying his request for declaratory judgment.  We find that the trial court did not abuse
its discretion in issuing the permanent injunction.  However, based on our finding that Trek has
the obligation to furnish fresh water to Montfort, we modify the permanent
injunction as set forth below, reverse the declaratory judgment, render
judgment that Trek has the obligation to furnish fresh water to Montfort for
use at his house and for the purpose of watering his livestock, and remand the
issue of attorney=s fees to
the trial court for further consideration.                       

                                                 Factual
and Procedural Background

The dispute in this case arises from Trek=s operation of the North Pioneer Unit
in Eastland County, Texas.  The North
Pioneer Unit is an extensive secondary recovery oil field unit, consisting of
about sixty-two producing oil wells, fifty-five saltwater injection wells,
fifty-five freshwater wells, and Amiles
and miles@ of
associated flow lines.  The water flood
program was put into place in the unit about twenty years ago; and, in
operating the unit, Trek injects about 420,000 gallons of fresh water each day.  Montfort owns 653 surface acres within the
unit, and there is one well per each six or seven acres of Montfort=s surface estate.








Trek acquired its mineral interest in the North
Pioneer Unit from Citation 1987 Investment Limited Partnership, effective July
2000.  Citation had operated the North
Pioneer Unit for a number of years; and, during its operation of the unit,
Citation owned the mineral estate and the 653 surface acres currently owned by
Montfort.  On June 12, 2000, Montfort=s predecessor-in-interest, Edward L.
White, purchased the surface estate from Citation.  Citation executed a special warranty deed in
connection with the sale of the surface acres to White.  In the special warranty deed, Citation
reserved and excepted from the conveyance title to the freshwater gathering
system and to the underground water rights. 
As consideration for the deed, Citation agreed to furnish fresh water to
the house on the subject property and to White for the purpose of watering his
livestock.  Trek purchased its mineral
interest from Citation with notice of Citation=s
special warranty deed to White. Montfort acquired the surface estate from White
on December 18, 2003.   

On January 5, 2004, Trek filed an application for
a temporary restraining order, temporary injunction, and permanent injunction,
seeking to enjoin Montfort from interfering with its leasehold operations.  Trek alleged that Montfort had interfered
with its operations in a number of ways, including locking out Trek=s pumpers and service companies from
the property.  The trial court entered a
temporary restraining order.  On January
9, 2004, Montfort filed his answer, counterclaim, declaratory judgment action,
and action for injunctive relief. 
Thereafter, both parties filed additional pleadings seeking various
injunctive and declaratory relief.  On
October 15, 2004, after four evidentiary hearings relating to the requests for
injunctive relief and the trial in this case, the trial court entered its order
for issuance of a permanent injunction and declaratory judgment and denying
Trek=s request
for attorney=s
fees.  The trial court entered findings
of fact and conclusions of law in support of its judgment.

The Trial Court=s
Permanent Injunction

The trial court=s
permanent injunction ordered Montfort to desist and refrain from committing the
following acts:

a. interfering or preventing [Trek], its agents,
servants and/or employees from ingress and egress on, over and across [Montfort=s] property or any adjoining properties
on which [Trek] has a leasehold interest.

 

b.  locking
out [Trek] from [Montfort=s]
property or any other properties on which [Trek] has leasehold operations.

 

c.  blocking
in any way [Trek=s] routes
of ingress and egress on, over and across [Montfort=s]
property or any other properties on which [Trek] conducts leasehold operations
and accesses from [Montfort=s]
property.

 

d. operating, or attempting to operate,
manipulate, or attempting to manipulate, any of [Trek=s]
leasehold equipment and/or facilities, including, but not being limited to oil
and gas leasehold facilities or fresh water facilities, including pipelines,
valves, or any other facilities of [Trek] located on [Montfort=s] property or any other property on
which [Trek] conducts leasehold operations.

 








e. interfering in any way with [Trek=s]
transport of oil, gas, fresh water, produced water or any other substance
within, onto or off of [Montfort=s]
property or within, onto or off of any other properties on which [Trek]
conducts leasehold operations, including, but not being limited to, pipeline
transports, truck transports or any other methods of transport utilized by
[Trek] on their leasehold interests.

 

f. making frivolous and false complaints to the Texas Railroad
Commission concerning [Trek=s]
leasehold operations on [Montfort=s]
property.

 

g. drilling, completing, pumping or attempting to drill, complete
or pump or otherwise removing any subsurface water from any well bore on
[Montfort=s]
estate[.]

 

h. interfering in any way with [Trek=s]
production of [Trek=s]
subsurface water on [Montfort=s]
surface estate[.]

 

i. access to any subsurface water well bore or equipment on or in
said subsurface water well on [Montfort=s]
surface estate[.]

 

j. operating any equipment used for the purpose of removing or
pumping subsurface water from [Montfort=s]
surface estate.

            

In his first appellate issue, Montfort argues
that the trial court erred in granting Trek a permanent injunction. 

The Trial Court=s Declaratory Judgment

The trial court ordered the
following in its declaratory judgment:

a. That [Trek] has no obligation to furnish
[Montfort] fresh water to his house and livestock from [Trek=s] fresh water facilities.

 

b. That [Trek] is the owner and holder of the fee
title to the underground water rights on [Montfort=s]
surface estate and that [Montfort] has no right to the underground water on
[his] surface estate.

 

c. That [Trek] owns the cattle guards on [Montfort=s] property.

 

d. That [Trek] has a legal right to operate its
fresh water facilities on [Montfort=s]
property.

 

e. That [Montfort] has no standing to make any
claims or demands relative to the Unitization Agreement attached to [Montfort=s] counterclaim as Exhibit AD.@

 

f. That [Trek] has a legal right to utilize
[Montfort=s]
property for the purpose of accessing [Trek=s]
leasehold interest on adjacent properties.

 








g. That [Trek] has no obligation to [Montfort] to
plug [its] fresh water wells on [Montfort=s]
property. 

 

In his second appellate issue, Montfort complains that the trial
court erred in granting declaratory judgment in favor of Trek.  Specifically, Montfort asserts that the trial
court erred in declaring the matters set forth in Paragraphs a, b, c, and e
above.

In his third appellate issue, Montfort asserts
that the trial court erred in denying his petition for declaratory
judgment.  Specifically, Montfort
contends that the trial court erred (1) in denying him the declaration that he
is entitled to uninterrupted water furnished to the house and for livestock,
(2) in denying him the declaration that Trek remove trash and debris from the
property, and (3) in denying him the recovery of his attorney=s fees.

Permanent Injunction Issues

Montfort=s
first issue challenges the issuance of the permanent injunction.  Montfort asserts that there was no evidence
or, alternatively, insufficient evidence to support the issuance of the
injunction.  An applicant for permanent
injunctive relief must establish the following four elements: (1) the existence
of a wrongful act; (2) the existence of imminent harm; (3) the existence of
irreparable injury; and (4) the absence of an adequate remedy at law.  Jordan v. Landry=s Seafood Rest., Inc., 89 S.W.3d
737, 742 (Tex. App.CHouston
[1st Dist.] 2002, pet. denied) (op. on reh=g);
Swate v. Medina Community Hosp., 966 S.W.2d 693, 700 (Tex. App.CSan Antonio 1998, pet. denied).  








We review a trial court=s
ruling on applications for permanent injunctions for an abuse of
discretion.  Operation Rescue-Nat=l v. Planned Parenthood of Houston and
Se. Tex., Inc., 975 S.W.2d 546, 560 (Tex. 1998); Stein v. Killough,
53 S.W.3d 36, 40-41 (Tex. App.CSan
Antonio 2001, no. pet.).  A trial court
abuses its discretion when it acts without reference to any guiding rules or
principles.  Downer v. Aquamarine
Operators, Inc., 701 S.W.2d 238, 241-42 (Tex. 1985).  In a bench trial, the trial court, as
fact-finder, is the sole judge of the credibility of the witnesses.  Sw. Bell Media, Inc. v. Lyles, 825
S.W.2d 488, 493 (Tex. App.CHouston
[1st Dist.] 1992, writ denied).  In conducting our review, we consider the
evidence in the light most favorable to the trial court=s judgment. 
Stein, 53 S.W.3d at 41.  In
reviewing for an abuse of discretion, we do not review the issues under
traditional legal and factual insufficiency standards.  Id. 
Legal and factual insufficiency claims are not independent grounds
of error; they are factors we weigh in determining whether the trial court
abused its discretion.  Id.  If some evidence appears in the record
that reasonably supports the trial court=s decision, there is no abuse of
discretion.  Id.  Thus, a trial court does not abuse its
discretion when its decision is based on conflicting evidence.  Recon Exploration, Inc. v. Hodges, 798
S.W.2d 848, 851 (Tex. App.CDallas 1990, no writ).  However, an appellate court will find
an abuse of discretion if the record reflects that the trial court=s findings necessary to sustain an
order are not supported by some evidence. 
Stein, 53 S.W.3d at 41 (citing Operation Rescue, 975
S.W.2d at 560).

The trial court held four hearings relating to the
parties= requests
for temporary injunctive relief.  The
following witnesses testified at one or more of the hearings: (1) Conrad
Mirochna, an operations manager and geologist for Trek; (2) Thomas (Tommy)
Ames, a field foreman for Trek; (3) Bobby Schumann, a field inspector for the
Texas Railroad Commission; (4) Jimmy Wilson, a licensed water well driller; and
(5) Montfort.  The parties stipulated to
the use of the testimony and exhibits from the prior hearings as evidence at
trial.  The trial court approved the
stipulation and considered the evidence from the hearings for the purposes of
the trial, and the parties offered additional evidence at the trial.

Mirochna and Ames testified that Montfort had
interfered with Trek=s
operation of the North Pioneer Unit in several respects.  For example, Ames testified to the following:
(1) that, on December 17, 2003, Montfort removed Trek=s
locks from three gates and then used his locks on the gates, thereby locking
Trek=s pumpers
out of the property; (2) that, on another occasion, Montfort locked Trek=s pumpers and service companies out of
the property in an effort to prevent Trek from chemically treating two wells on
the property; (3) that Montfort had interfered with Trek=s
operation of an adjacent lease B
the Beggs=s lease B by locking the gate in between his
property and the Beggs=s
property; and (4) that, on another occasion, Montfort blocked Trek=s entry into the Beggs=s lease by blocking the gate with his
car.








Trek presented evidence that Montfort made two
complaints to the Texas Railroad Commission about Trek=s
Injection Well No. 409.  In each
complaint, Montfort claimed that there was pressure on the casing of the
well.  Mirochna and Ames testified that
it is necessary to open the valve on the well to determine whether there is
pressure on the casing.  Ames said that
opening a valve can be dangerous if there is pressure on the casing.  Montfort denied that he opened the valve on
the well.  Schumann investigated one of
Montfort=s
complaints for the Texas Railroad Commission. 
He did not find anything to substantiate Montfort=s
complaint.  Scott Bates, an investigator
for the Texas Railroad Commission, investigated Montfort=s
other complaint about the well.  The
evidence showed that Bates found nothing to substantiate Montfort=s complaint.

Mirochna testified that Montfort opened a valve on
Trek=s
freshwater facility for the purpose of filling up his stock tank.  Mirochna testified that, under certain
circumstances, opening the valve created the danger of a salt water spill.  Montfort admitted that he opened the valve so
that he could fill up his stock tank. 
Ames also testified that Montfort had a pump installed on a water well
and then pumped water out onto the ground for a period of about twenty-four to
twenty-seven hours.         While Montfort disputed much of the
testimony of Mirochna and Ames, the trial court, as the sole judge of the
credibility of the witnesses, was entitled to believe the testimony of Mirochna
and Ames and to disbelieve the testimony of Montfort.  McGalliard v. Kuhlmann, 722 S.W.2d
694, 697 (Tex. 1986).  In its findings of fact, the trial court
found that Montfort had engaged in a number of wrongful acts interfering with
Trek=s leasehold operations, including the
following:

(8)(b)
On March 20, 2003, [Montfort] contacted the Texas Railroad Commission and
complained that [Trek=s] injection well #409, located on
[Montfort=s] property and operated by [Trek], had
pressure on the casing.  The Texas
Railroad Commission field inspector, Scott [Bates], investigated the complaint
and found nothing to substantiate [Montfort=s]
claim.  In order for [Montfort] to have
determined whether or not there was pressure on the casing on [Trek=s] injection well #409, [Montfort] would
have had to have opened a valve on [Trek=s] injection well #409.  By opening [Trek=s] valve on its leasehold facilities,
[Montfort] was subjected to danger and [Trek] to liability.

 

(8)(c)  On July 30, 2003, [Montfort] contacted the
Texas Railroad Commission again to register his complaint that [Trek=s] injection well #409 had pressure on the
casing.  Texas Railroad Commission field
inspector, Bobby Schumann, investigated [Montfort=s]
complaint and found nothing to substantiate [Montfort=s] claim.

 








(8)(d)  On December13 and/or 14, 2003, [Montfort]
and/or his agents, servants or employees acting under his direction,
instruction, and/or control, opened a valve on [Trek=s] fresh water leasehold facilities in
order to flow water from [Trek=s] facilities to [Montfort=s] stock tank. This operation of [Trek=s] fresh water leasehold facilities by
[Montfort] was done without the knowledge of [Trek] and/or [Trek=s] permission to operate said
facilities.  [Montfort=s] unauthorized and unlawful operation of
[Trek=s] fresh water facilities subjected [Trek]
to liability and [Montfort] to danger. 

 

(8)(e) On December 17,
2003, [Montfort] removed and disposed of [Trek=s]
locks located on three gates on the perimeter of [Montfort=s] property and used [Montfort=s] locks to lock out [Trek=s] pumpers from [Trek=s] oil and gas leasehold on [Trek=s] property.

 

(8)(f) On December 19,
2003, [Trek=s] pumpers and service companies were
locked out of [Montfort=s] property by [Montfort] in an effort to
prevent [Trek] from chemically treating two wells on [Montfort=s property].  Further, [Montfort] attempted to prevent
[Trek] from accessing its Beggs lease by installing a lock on the
Beggs/Montfort gate. [Montfort] further interfered with [Trek=s] leasehold operations on, over and across
[Montfort=s] property by interposing his truck across
the Beggs/Montfort road and gate and further installing a larger lock and chain
on the Beggs/Montfort gate. [Trek] was denied access to its Beggs lease as a
result of [Montfort=s] actions. 
As a result of [Montfort=s] activities described above, [Trek] was
required to halt all its operations on the Beggs No. 2 location, which is
accessed through the Beggs/Montfort gate described above.

  

(8)(h) [Montfort] has
made frivolous and false complaints to the Texas Railroad Commission concerning
[Trek=s] leasehold operations on [Montfort=s] subject property.

 

The
testimony of Mirochna, Ames, and Schumann supports the trial court=s findings of fact.  Mirochna and Ames testified that Montfort=s interference with Trek=s leasehold operations and equipment
created potential dangers and that many dangers are inherent in the operation
of an extensive unit.  Montfort=s interference with Trek=s leasehold operations, either by denying
Trek access to the leasehold property or by operating Trek=s equipment, poses a real risk of harm to
Trek and supports the trial court=s finding of imminent harm.  By locking Trek out of the property, Montfort
denies Trek access to its wells and jeopardizes Trek=s operations.  For example, when Montfort locks Trek out of
the property, Trek may not be able to access problem wells or other problems
associated with the unit.  If Montfort operates
Trek=s equipment, any number of dangers may
arise, including a salt water spill.








            An
irreparable injury occurs when the injury is of such a nature that the injured
party cannot be adequately compensated for it in damages or the damages cannot
be measured by any certain pecuniary standard. 
Butnaru v. Ford Motor Co., 84 S.W.3d 198, 204 (Tex. 2002).  A party has no adequate remedy at law when
damages are incapable of calculation or the party to be enjoined is incapable
of responding in damages.  See Recon
Exploration, 798 S.W.2d at 851.  Trek=s potential damages relating to future
interference by Montfort cannot be measured by any certain pecuniary
standard.  Therefore, the evidence
supports the trial court=s findings of an irreparable injury and the
absence of an adequate remedy at law.

The
trial court did not abuse its discretion in granting a permanent
injunction.  Therefore, the trial court
did not err in granting the permanent injunction.  However, because Paragraphs g, i, and j of
the permanent injunction conflict, in part, with our ruling on the water issues
presented in Montfort=s second and third issues, we modify those
paragraphs as set forth below.  We
sustain Montfort=s first issue with respect to Paragraphs g,
i, and j of the permanent injunction, and we overrule the remainder of Montfort=s first issue.    

                                                       Declaratory
Judgment Issues 

In his second issue, Montfort challenges four of
the trial court=s
declarations: (1) that Trek has no obligation to furnish Montfort fresh water
to his house and livestock from Trek=s
fresh water facilities; (2) that Trek is the owner and holder of the fee title
to the underground water rights and that Montfort has no right to the
underground water on his surface estate; (3) that Trek owns the cattle guards
on Montfort=s
property; and (4) that Montfort has no standing to make any claims or demands
relative to the Unitization Agreement attached to Montfort=s counterclaim as Exhibit AD.@
With respect to item number (2) above, Montfort agrees that Trek owns and holds
the fee title to the underground water rights. 
However, Montfort asserts that he has a right to use the underground
water.

In his third issue, Montfort complains that the
trial court erred in denying a declaratory judgment (1) that Trek must furnish
water to his house and for the purpose of watering his livestock and (2) that
Trek must remove debris and trash from his property.  Montfort also asserts that the trial court
erred in failing to award him attorney=s
fees on his declaratory judgment claim.








We review declaratory judgments under the same
standards as other judgments and decrees. 
Tex. Civ. Prac. & Rem. Code
Ann. ' 37.010
(Vernon 1997); Guthery v. Taylor, 112 S.W.3d 715, 720 (Tex. App.CHouston [14th Dist.] 2003, no pet.);
Roberts v. Squyres, 4 S.W.3d 485, 488 (Tex. App.CBeaumont
1999, pet. denied).  We look to the
procedure used to resolve the issue at trial to determine the standard of
review on appeal.  Guthery, 112
S.W.3d at 720; Roberts, 4 S.W.3d at 488. 
Here, the trial court determined the declaratory judgment issue after a
bench trial.  Therefore, we apply a
sufficiency of the evidence review to the trial court=s
factual findings and review its conclusions of law de novo.  See Black v. City of Killeen, 78
S.W.3d 686, 691 (Tex. App.CAustin
2002, pet. denied).

Fresh Water Issues

Citation executed a special warranty deed when it
sold the surface estate to White (Montfort=s
predecessor-in-interest).  In the deed,
Citation reserved for itself and its successors and assigns title to the fresh
water gathering system and to the underground water rights.  The deed contained the following
consideration provision:

As a material part of the consideration for this
Deed, Grantor and Grantee agree as follows:

 

(1)
Upon the termination of the existing oil and gas leases, Grantor or its
successors and assigns shall relinquish title to the following: cemented pipe
racks, metal storage buildings (3), and office building (1).

 

(2)
Only for so long as the fresh water gathering system and Grantor=s water wells remain operational,
Grantor or its successors and assigns shall furnish fresh water to the house
and to Grantee for the purpose of watering Grantee=s
livestock.

 

(3)
Grantee shall have the right to drill fresh water wells and utilize any water
produced from such wells for Grantee=s
purposes.

 

(4)
Upon the termination of the existing oil and gas leases, Grantor or its
successors and assigns shall relinquish title to the fresh water rights and the
fresh water gathering system.

 

(5) Title to earthen stock ponds shall be conveyed to Grantee.

 








Montfort argues that, under the special warranty deed,
the grantor=s
obligation to furnish fresh water to the house and to the grantee for the
purpose of watering the grantee=s
livestock is a covenant running with the land. 
Therefore, Montfort asserts that Trek has the obligation to furnish
fresh water to his house and to him for the purpose of watering his
livestock.  Trek argues that Citation and
White intended the obligation to furnish water to be a personal covenant solely
benefitting White, as opposed to a covenant running with the land.  In Paragraph (2) above, Citation and White
provided that the A[g]rantor
or its successors and assigns@
shall furnish water to A[g]rantee.@ 
However, they did not include Asuccessors
and assigns@ language
with respect to the grantee.  Trek
asserts that, in the absence of  Asuccessors and assigns@ language with respect to the grantee,
the obligation of  A[Citation] or its successors and
assigns@ to
furnish water did not flow to White=s
successors and assigns.  Trek also argues
that the obligation to furnish water was not a covenant running with the land
because the obligation did not confer a benefit on Citation, the grantor.

The court=s
primary concern in construing a deed is to ascertain the true intent of the
parties as expressed in the instrument.  See
Forbau v. Aetna Life Ins. Co., 876 S.W.2d 132, 133 (Tex. 1994); Luckel
v. White, 819 S.W.2d 459, 461 (Tex. 1991). 
The construction of an unambiguous deed is a question of law to be
resolved by the court.  Altman v.
Blake, 712 S.W.2d 117, 118 (Tex. 1986). 
When construing such a deed,
the intent of the parties is to be determined from the express language found
within the four corners of the document. 
Luckel, 819 S.W.2d at 461. 
All parts of the deed are to be harmonized, construing the
instrument to give effect to all of its provisions.  Id. at 462; Marker v. Garcia,
185 S.W.3d 21, 29 (Tex. App.CSan Antonio 2005, no pet.). 

In
Texas, a covenant runs with the land if (1) it touches and concerns the land,
(2) it relates to a thing in existence or specifically binds the parties and
their assigns, (3) it is intended by the original parties to run with the land,
and (4) the successor to the burden has notice. 
Inwood N. Homeowners= Ass=n v. Harris, 736
S.W.2d 632, 635 (Tex. 1987).  Covenants
that run with the land bind the heirs and assigns of the covenanting parties,
while personal covenants do not.  Tarrant
Appraisal Dist. v. Colonial Country Club, 767 S.W.2d 230, 235 (Tex. App.CFort Worth 1989, writ denied).  








In Wimberly
v. Lone Star Gas Co., 818 S.W.2d 868, 871 (Tex. App.CFort Worth 1991, pet. denied), the court
held that a landowner=s promise to provide water from wells on
the land touched upon the land and constituted a covenant running with the
land.  Although no Texas case has stated
a general rule with respect to covenants to supply or furnish water, case law
from other jurisdictions establishes that covenants to supply or furnish water
generally run with the land.  See
Camenisch v. City of Stanford, 140 S.W.3d 1, 5 (Ky. Ct. App. 2003); see
also 20 Am. Jur. 2d Covenants, Conditions, and Restrictions (1995).

Citation=s covenant to furnish fresh water satisfied
the first two elements of a covenant running with the land.  First, the covenant to furnish water touched
and concerned the land.  Wimberly,
818 S.W.2d at 871.  Second, the water and
water gathering system were in existence when Citation provided the special
warranty deed to White.  The evidence established
that Trek had notice of Citation=s special warranty deed to White and that,
therefore, Trek had notice of Citation=s obligation to furnish water.  Because Trek had notice of the burden to
furnish water, the evidence established the fourth element of a covenant
running with the land.

The
issue is whether Citation and White intended Citation=s covenant to furnish water to run with the
land.  Trek argues that they did not
intend the covenant to run with the land because they did not provide that the
covenant flowed to the Asuccessors and assigns@ of the grantee.  However, while the use of terminology such as
Asuccessors and assigns@ is helpful in determining intent, the use
of such terminology is not dispositive of the issue, and an obligation intended
to run with the land can be created without such language.  Musgrave v. Brookhaven Lake Prop. Owners
Ass=n, 990 S.W.2d 386, 395 (Tex. App.CTexarkana 1999, pet. denied).  








Although
Citation and Trek did not use the words Asuccessors and assigns@ with respect to the grantee, the
provisions in the special warranty deed demonstrate that they intended the
obligation to furnish water to run with the land.  In Paragraph (2) above, Citation agreed to
furnish fresh water to the house and to grantee for the purpose of watering
grantee=s livestock.  Citation and White did not include language
limiting Citation=s obligation to furnish water to the house
to the time period in which White lived in the house.  The failure to include limiting language indicates
an intent for the obligation to last longer than White=s tenure in the house.  In Paragraph (4) above, the parties provided
that, upon the termination of the existing oil and gas leases, Citation or its
successors and assigns shall relinquish title to the fresh water rights and the
fresh water gathering system.  Paragraph
(4) does not include language limiting Citation=s
obligation to relinquish title to the water rights to White.  Citation and White would have contemplated
that the leases could remain in effect for longer than White=s ownership of the surface estate.  Because the leases could have remained in
effect for longer than White=s ownership of the surface estate,
Paragraph (4) would be rendered meaningless if Citation=s agreement to relinquish title to the
fresh water rights were limited to White. 
In Paragraph (5) above, Citation agreed to convey title to the stock
ponds to White.  The transfer of title to
the stock ponds indicates a lasting use of water by the surface owner and his
successors.  

The use
of water is a necessity for a surface owner. 
If Citation had limited its obligation to furnish water only to White,
then White=s ability to sell the property could have
been severely restricted.  Viewing the
deed in its entirety, we find that Citation and White intended Citation=s obligation to furnish fresh water to run
with the land.  The evidence satisfied
the four elements for a covenant running with the land.

Trek
cites Beckham v. Ward County Irr. Dist. No. 1, 278 S.W. 316, 317 (Tex.
Civ. App.C El Paso 1925, writ ref=d), and Lakewood Heights Co. v.
McCuistion, 226 S.W. 1109, 1110 (Tex. Civ. App.CDallas 1921, writ ref=d), for the following proposition:

Those covenants which are held to run with
the land and inure to the benefit of the assignee[,] are such as generally
affected the land itself and conferred a benefit on the grantor.             

 

Trek contends that
Citation=s covenant to furnish water does not run
with the land because it does not confer a benefit on the grantor,
Citation.  As in Wimberly, we find
no such requirement for a covenant running with the land.  Wimberly, 818 S.W.2d at 871.  The definition for a covenant running with
the land merely requires Athat the covenant touch upon the land.@  Id.

Because
Citation=s covenant to furnish fresh water runs with
the land, the trial court erred  in
concluding and in granting declaratory judgment that Trek has no obligation to furnish
Montfort fresh water to his house and for the purpose of watering Montfort=s livestock.  The trial court also erred in denying a
declaratory judgment that Trek must furnish water to Montfort in accordance
with Paragraph (2) above of Citation=s special warranty deed to White.  Under Paragraph (3) of the special warranty
deed, Montfort has the right to drill fresh water wells and utilize any water
produced from such wells for his purposes. 
Therefore, we sustain Montfort=s second and third issues to the extent
that Montfort challenges the trial court=s ruling on Trek=s obligation to furnish fresh water under
the terms of Citation=s special warranty deed to White. 

The Cattle Guards

The
trial court declared that Trek owns the cattle guards on Montfort=s property. 
Trek contends that it owns the cattle guards by virtue of the following
reservation provision in Citation=s special warranty deed to White:

[Citation]
RESERVES AND RETAINS for itself and its successors and assigns all of [Citation=s] undivided interest in and to all
tangible personal property, equipment, fixtures, improvements, easements,
permits, licenses, servitudes and other appurtenances including, but not by way
of limitation, all wells, injection wells, salt water disposal facilities, well
heads, casing, tubing, pumps,  motors,
gauges, valves, heaters, treaters, gathering lines, flow lines, gas lines,
water lines, tanks, boilers, separators, buildings, platforms, machinery,
tools, treating equipment, compressors, and other equipment, pipelines, power
lines, and other appurtenances, situated upon the Subject Lands or any land or
lands pooled or unitized therewith or used or obtained in connection with the
production, treating, storing or transportation of oil, gas and other
hydrocarbons or minerals therefrom.      


 

The record contains
limited testimony regarding ownership of the cattle guards.  Mirochna considered that Trek owned the cattle
guards because he did not believe that Citation conveyed the cattle guards to
White.

The
record does not contain any evidence to support a finding that Trek owned the
cattle guards.  First, Citation did not
specifically reserve the cattle guards in the reservation paragraph.  Second, the items specifically listed in the
reservation paragraph relate to the production of oil and gas, and the evidence
in the record does not establish that the cattle guards related in any way to
the production of oil and gas.  The trial
court erred in declaring that Trek owned the cattle guards on Montfort=s property. 
We sustain Montfort=s second issue to the extent that Montfort
complains about the trial court=s ruling on the ownership of the cattle
guards. 

The Unitization
Agreement

The
trial court determined that Montfort did not have standing to make any claims
or demands under the unit agreement for the North Pioneer Unit.  Montfort attached certain pages from the unit
agreement as Exhibit AD@ to his counterclaim and introduced a copy
of the unit agreement in its entirety as Exhibit A2@ at trial. 
The effective date of the unit agreement was October 28, 1980. Exhibit A2@ was signed on behalf of Cordova Resources,
Inc., the unit operator and working interest owner.  Exhibit A2@ does not contain signatures from any other
parties to the unit agreement.








The
evidence established that Montfort was not a party to the unit agreement.  He did not own any mineral interests in the
North Pioneer Unit.  The parties to the unit
agreement were working interest owners and royalty owners in the unit.  The evidence did not demonstrate how
Montfort, a surface owner, would have standing to assert claims under the unit
agreement.  Montfort did not show that he
was a successor or assign of any party to the unit agreement.  Based on the evidence, the trial court did
not err in declaring that Montfort did not have standing to make claims or
demands under the unit agreement. 
Additionally, the record does not contain any evidence that Trek
breached the unit agreement.  We overrule
Monfort=s second issue to the extent that he
challenges the trial court=s ruling on the standing issue.

Trash and Debris on
Montfort=s Surface Estate

Montfort
argues that the trial court erred in denying a declaratory judgment
requiring that Trek remove trash and debris from his surface estate.  In Texas, the mineral estate is the dominant
estate.  Ball v. Dillard, 602
S.W.2d 521, 523 (Tex. 1980); Getty Oil Co. v. Jones, 470 S.W.2d 618, 621
(Tex. 1971).  The mineral owner and its
lessee have the right to use as much of the premises as is reasonably necessary
to produce and remove the minerals.  Getty
Oil Co., 470 S.W.2d at 621; Delhi Gas Pipeline Corp. v. Dixon, 737
S.W.2d 96, 97 (Tex. App.CEastland 1987, writ denied).

Montfort
and Trek offered conflicting evidence on this issue.  Montfort testified about the trash and debris
on the property and presented pictures showing the condition of the
property.  Trek presented testimony that
it cleaned up trash and debris as it went on the property.  Mirochna testified that Trek had performed a
lot of cleanup on the property since acquiring its mineral leasehold interest
from Citation.

Montfort
did not establish that Trek used more of the premises than was reasonably
necessary to produce the minerals.  Given
the conflicting evidence on the issue, we find that the trial court did not err
in denying Montfort a declaratory judgment requiring Trek to remove trash and
debris from his surface estate.  We
overrule Montfort=s third issue to the extent that he
complains of the trial court=s ruling on this issue.

Attorney=s Fees 








Montfort
complains that the trial court erred in denying his request for attorney=s fees pursuant to the Texas Declaratory
Judgment Act (the Act).  The Act allows a
trial court to grant reasonable and necessary attorney=s fees as are equitable and just.  Tex.
Civ. Prac. & Rem. Code Ann. ' 37.009 (Vernon 1997).  The grant or denial of attorney=s fees in a declaratory judgment action
lies within the discretion of the trial court, and its judgment will not be
reversed on appeal absent a clear showing that it abused that discretion.  Oake v. Collin County, 692 S.W.2d 454,
455 (Tex. 1985).  In the exercise of its
discretion, the trial court may award attorney=s
fees to the prevailing party, may decline to award attorney=s fees to either party, or may award
attorney=s fees to
the nonprevailing party.  Sava
Gumarska in Kemijska Industria D.D. v. Advanced Polymer Sci., Inc., 128
S.W.3d 304, 323-24 (Tex. App.CDallas
2004, no pet.).     

In this case, the trial court did not award
attorney=s fees to
either party.  The trial court acted
within its discretion in denying attorney=s
fees to the parties.  However, in light
of our rulings on the declaratory judgment issues in this opinion, we remand
this cause to the trial court for it to consider and exercise its discretion on
the amount of attorney=s
fees, if any, which should be awarded to the parties in this case.  Barshop v. Medina County Underground Water
Conservation Dist., 925 S.W.2d 618, 637-38 (Tex. 1996).

                                                               This
Court=s Ruling

We reverse Paragraphs a, b, and c of the trial
court=s
declaratory judgment (dealing with the water issue and cattle guards issue) and
delete them from the judgment.  We render
declaratory judgment and replace Paragraphs a, b, and c of the trial court=s declaratory judgment as follows:

a. That Plaintiff, TREK RESOURCES, INC., is
the owner and holder of the fee title to the underground water rights.

  

b. That,
under the terms of Citation=s Special Warranty Deed to Edward L. White,
executed on June 12, 2000, (1) Plaintiff, TREK RESOURCES, INC., has the
obligation to furnish fresh water to the house and to Defendant for the
purpose of watering his livestock and (2) Defendant has the right to drill
fresh water wells on his surface estate and utilize any water produced from
such wells for such purposes.

 

c. That Defendant owns the cattle guards on his
property.

 

We affirm the remainder of the trial court=s
declaratory judgment.








We modify the trial court=s
permanent injunction by deleting Paragraphs g, i, and j of the permanent
injunction and replacing them with the following paragraphs:

g.
drilling, completing, pumping or attempting to drill, complete or pump or
otherwise removing any subsurface water from any well bore owned by Plaintiff
on Defendant=s surface estate.

 

i.
accessing any of Plaintiff=s subsurface water well bores or equipment
on or in said subsurface water wells on Defendant=s
surface estate.

 

j.
operating any of Plaintiff=s equipment used for the purpose of
removing or pumping subsurface water from Defendant=s surface estate.                                           

We affirm the remainder of the permanent injunction.

We remand the issue of attorney=s fees to the trial court for further
consideration.

 

TERRY McCALL

JUSTICE       
    

 

June 22, 2006

Panel
consists of:  Wright, C.J., and

McCall,
J., and Strange, J.