**Shirley JORDAN and Jordan V., Inc., Appellants,**

v.

**LANDRY'S SEAFOOD RESTAURANT, INC., Willie G's Galveston, Inc., Landry's Crab Shack, Inc., and The City of Kemah, Appellees.**

No. 01–00–00621–CV.

Court of Appeals of Texas, Houston (1st Dist.).

Oct. 17, 2002.

Robert D. Clements, Jr., Law Offices of Robert D. Clements, Alvin, TX, for Appellants.

* The Honorable Jackson B. Smith, Jr., retired Justice, Court of Appeals, First District of Texas at Houston, participating by assignment.

Dick M. Gregg, Jr., Gregg & Gregg, James L. Ware, Richard A. Sheehy, Sheehy, Serpe & Ware, Houston, TX, for Appellees.

Panel consists of Justices MIRABAL, TAFT, and SMITH.*

## OPINION ON REHEARING

JACKSON B. SMITH, JR., Justice (Retired).

We withdraw our Opinion of July 18, 2002 and issue this one in its stead. Appellants' motion for rehearing is denied.

Shirley Jordan and Jordan V., Inc. (collectively "Jordan") sought temporary and permanent injunctions against the City of Kemah and Landry's Crab Shack[1] to stop the restriction of traffic on Second Street, which abuts property they own and lease to Landry's Crab Shack, Inc. in the City of Kemah. The trial court denied Jordan's petition for temporary injunction and later granted Landry's and Kemah's motions for summary judgment, dismissing the case. In five points of error, Jordan claims the trial court erred in denying the temporary injunction and granting the summary judgments. We affirm.

### I. Background

Jordan V., a corporation formed to hold and develop real estate owned by the Jordan family, owned an undeveloped waterfront tract of land on Second Street in Kemah, Texas. It leased the land to Landry's at $6,000 per month for 20-year term with three additional five-year options.

1. Jordan also sued Willie G's Galveston, Inc. and Landry's Crab Shack, Inc., which are both owned by Landry's. All three Landry's entities are appellees.

Under the lease, Landry's has exclusive right to occupy and control the property.

Landry's built a restaurant on the property and paid all construction costs.[2] Landry's purchased all the land surrounding Jordan's property and all other property abutting Second Street and began developing the Kemah waterfront into a family recreation area with restaurants and shops. The lots on the Kemah Boardwalk are bordered by Second Street on the south and water on the north. Due to the increase of traffic on Second Street from the proposed development, the City of Kemah became concerned about the safety of pedestrians. Kemah and Landry's wanted to limit access to Second Street "in order to ensure safety and enhance the family environment."

Kemah conducted public hearings on whether to limit the traffic on Second Street only to emergency vehicles and pedestrians. On July 24, 1997, Kemah passed Resolution 97–14 which approved a sale of the entire street to Landry's for $300,000, but the resolution did not go into effect because Jordan would not consent without compensation for the alleged loss of its property value.[3]

One month later, Kemah passed Resolution 97–16 selling all of Second Street to Landry's except the portion in front of Jordan's property. The street in front of the Jordan property that is leased to Landry's would be limited to pedestrian and emergency traffic for the duration of the lease. The resolution also provided that Kemah would return the portion of the street abutting the Jordan property to its original condition at the conclusion of the lease.

Jordan claimed the value of its property, which was now landlocked by property owned by Landry's, whom it considers a "malevolent and dishonest oppressor," "immediately plummeted." Jordan sued Kemah and Landry's to stop the enforcement of resolution 97–16. The trial court denied the petition for a temporary injunction, and there was no activity on the case until it was placed on the dismissal docket. Landry's and Kemah subsequently filed separate motions for summary judgment, which the trial court granted. Jordan appeals the trial court's order.

## II. Injunctions

In point of error one, Jordan contends the trial court abused its discretion by denying his petition for injunctive relief and his motion for summary judgment seeking to prohibit the restriction of traffic on Second Street during the term of the lease.

### A. Temporary Injunction

On October 22, 1997, the trial court conducted a hearing on the petition for temporary injunction, and, the next day, denied the petition. An order granting or denying a temporary injunction is subject to an interlocutory appeal. See TEX. CIV. PRAC. & REM.CODE ANN. § 51.014 (Vernon Supp. 2002).

Customarily, appellate review of an interlocutory appeal of an order granting or denying a temporary injunction, is strictly limited to determining whether there has been a clear abuse of discretion by the trial court. See Sonny Arnold, Inc. v. Sentry Sav. Ass'n, 633 S.W.2d 811, 816 (Tex.1982). We must not substitute our judgment for that of the trial court and

---

**2.** At the end of the lease, Jordan will own all improvements on the property.

**3.** Jordan demanded a cash payment from Landry's of $750,000 and an increase of its monthly rent to $25,000 and increasing to $45,000 over the remaining term of the lease.

determine that the trial court abused its discretion by denying injunctive relief unless the trial court's action was so arbitrary that it exceeded the bounds of reasonable discretion. *Davis v. Huey,* 571 S.W.2d 859, 861–62 (Tex.1978). The merits of the case are not presented for review. *Id.* at 861.

Jordan did not file an interlocutory appeal of the denial of the temporary injunction. On March 18, 1999, 17 months after denying the petition, the trial court gave notice to Jordan that it intended to dismiss its suit for want of prosecution. Eventually, the trial court granted both Landry's and Kemah's motions for summary judgment. Landry's and Kemah maintain the granting of their summary judgments renders any error with respect to the temporary injunction moot.

■■■■ If, during the pendency of the appeal of the granting or denying of the temporary injunction, the trial court renders final judgment, the case on appeal becomes moot. *Isuani v. Manske–Sheffield Radiology Group, P.A.,* 802 S.W.2d 235, 236 (Tex.1991). When a case becomes moot on appeal, all previous orders pertaining to the temporary injunction are set aside by the appellate court and the case is dismissed. *Id.* (citing *Texas Foundries, Inc. v. Int'l Moulders & Foundry Workers' Union,* 151 Tex. 239, 248 S.W.2d 460, 461 (1952)). The rendition of a final summary judgment by the trial court renders an appeal relating to the denial of the temporary injunction moot. *See Lowe v. Farm Credit Bank of Texas,* 2 S.W.3d 293, 299–300 (Tex.App.-San Antonio 1999, pet. denied). The temporary injunction has expired and no longer exists; therefor, the appeal is moot. *See Wright v. Wentzel,* 749 S.W.2d 228, 234 (Tex App.-Houston [1st Dist.] 1988, no writ). Therefore, the rendition of the final summary judgment by the trial court rendered Jordan's appeal

relating to the denial of the temporary injunction moot, and we dismiss that portion of the appeal.

**B. Permanent Injunction—Summary Judgment**

The motions for summary judgment filed by Landry's and Kemah raised both "traditional" and "no-evidence" grounds in their attacks on Jordan's request for a permanent injunction.

A party moving for a rule 166a(c) summary judgment has the burden of showing that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. Tex.R. Civ. P. 166a(c); *Nixon v. Mr. Prop. Mgmt. Co.,* 690 S.W.2d 546, 548 (Tex.1985). In deciding whether a disputed material fact issue exists, the reviewing court will take as true all evidence favoring the nonmovant. *Id.* at 548–49. Every reasonable inference must be indulged in favor of the nonmovant and any doubts resolved in the nonmovant's favor. *Id.*

Under rule 166a(i), a party is entitled to summary judgment if, after adequate time for discovery, there is no evidence of one or more essential elements of a claim or defense on which an adverse party would have the burden of proof at trial. Tex.R. Civ. P. 166a(i). Thus, a no-evidence summary judgment is similar to a directed verdict. *Flameout Design & Fabrication, Inc. v. Pennzoil Caspian Corp.,* 994 S.W.2d 830, 834 (Tex.App.-Houston [1st Dist.] 1999, no pet.). The motion for summary judgment may not be general, but must state the elements on which there is no evidence. Tex.R. Civ. P. 166a(i).

The trial court must grant the motion unless the nonmovant produces more than a scintilla of evidence raising a genuine issue of material fact on each of the challenged elements. *See id.; Macias v. Fies-*

*ta Mart, Inc.,* 988 S.W.2d 316, 317 (Tex. App.-Houston [1st Dist.] 1999, no pet.).

In light of Resolution 97–16, Jordan filed this suit seeking a permanent injunction preventing the city of Kemah and Landry's from limiting traffic on Second Street during the term of the lease.

▮▮▮ To be entitled to a permanent injunction, Jordan had to plead and prove: (1) a wrongful act; (2) imminent harm; (3) irreparable injury; and (4) no adequate remedy at law. *See Morris v. Collins,* 881 S.W.2d 138, 140 (Tex.App.-Houston [1st Dist.] 1994, writ denied). Fear or apprehension of the possibility of injury is not sufficient. *Frey v. DeCordova Bend Estates Owners Ass'n,* 647 S.W.2d 246, 248 (Tex.1983); *Mfrs. Hanover Trust Co. v. Kingston Investors Corp.,* 819 S.W.2d 607, 611 (Tex.App.-Houston [1st Dist.] 1991, no writ). An injunction will not be issued to prevent injury that is purely conjectural or speculative. *Morris,* 881 S.W.2d at 140. The decision whether to grant injunctive relief is within the sound discretion of the trial court. *Crain v. Unauthorized Practice of Law Comm.,* 11 S.W.3d 328, 332 (Tex.App.-Houston [1st Dist.] 1999, pet. denied).

▮▮▮ The first element of a permanent injunction requires the existence of a wrongful act. *Morris,* 881 S.W.2d at 140. Jordan contends that, by restricting the traffic of Second Street, Landry's and Ke-

mah committed a wrongful act in that they had no power over Jordan's objection as an abutting landowner.

▮▮▮ Under section 311.002 of the Texas Transportation Code, exclusive control over city streets belongs to the municipality.[4] However, section 311.008 of the Code requires consent from all abutting landowners before a municipality may vacate, abandon, or close a street.[5] Kemah did not "vacate, abandon, or close" Second Street but only *restricted* traffic on the street to emergency vehicles and pedestrians based on public safety concerns. "A city has the general power to regulate the use of its streets, and is authorized to enact traffic regulations and to impose reasonable restraints by means of ordinances for the protection of the welfare of the public in the proper use of its streets." *Town of Ascarate v. Villalobos,* 148 Tex. 254, 223 S.W.2d 945, 949 (1949)

Recognizing that section 311.008 required the consent of the adjoining landowners, including Jordan, before it vacated, closed, or abandoned the street, Kemah sold only the portions of Second Street abutting Landry's property. The section of the street in front of Jordan's property was not sold. The sale to Landry's was made pursuant to section 272.001 of the Texas Local Government Code, which allowed Kemah to sell Second Street because Kemah owned the

---

4. Section 311.002 provides, in pertinent part, as follows:

    **§ 311.002 General Authority of General—Law Municipality**

    (a) A general-law municipality has exclusive control over the highways, streets, and alleys of the municipality.

    (b) The municipality may:

    . . . .

    (2) open, change, regulate, or improve a street.

    TEX. TRANSP. CODE ANN. § 311.002 (Vernon 1999).

5. Section 311.008 provides as follows:

    **§ 311.008 Closing of Street or Alley by General—Law Municipality**

    The governing body of a general-law municipality by ordinance may vacate, abandon, or close a street or alley of the municipality if a petition signed by all the owners of real property abutting the street or alley is submitted to the governing body.

    TEX. TRANSP. CODE ANN. § 311.008 (Vernon 1999).

street, and Landry's purchased it for at least fair market value. *See* TEX. LOC. GOV'T CODE ANN. § 272.001 (Vernon Supp. 2002).[6] Kemah was not required to obtain Jordan's consent before it sold the portion of the street abutting Landry's property.

Therefore, we conclude the trial court did not err in determining no genuine issue of material fact existed and in denying injunctive relief.

Jordan argues the Transportation Code and the Local Government Code provisions discussed herein are in conflict because the Transportation Code requires consent from the abutting landowners while the Local Government Code is silent as to consent. We disagree. Kemah did not "vacate, abandon, or close" the section of Second Street abutting the Jordan property. It merely restricted its use to pedestrians and emergency vehicles during the duration of the lease. After the lease expires, the street will return to its original unrestricted state.

Jordan has failed to prove that the appellees committed a wrongful act which is a required element of a permanent injunction. We find no error in the trial court's denial of Jordan's request for injunctive relief.

We overrule Jordan's point of error one.

### III. Inverse Condemnation

■ In point of error two, Jordan argues the trial court erred in granting Landry's and Kemah's motions for summary judgment on Jordan's inverse condemnation claim. To recover on an inverse condemnation claim, a property owner must

establish that (1) the State or other governmental entity intentionally performed certain acts (2) that resulted in the taking, damage, or destruction of the owner's property (3) for public use. *See Steele v. City of Houston,* 603 S.W.2d 786, 788–92 (Tex.1980); *Lethu Inc. v. City of Houston,* 23 S.W.3d 482, 485 (Tex.App.-Houston [1st Dist.] 2000, pet. denied).

■ Jordan contends, if Landry's and Kemah had the power to restrict traffic on Second Street such restriction amounted to a "taking" under the Texas Constitution. We find no merit to this contention because there has not been a taking. *See* TEXAS CONST. art. I, § 17. A decrease in market value alone will not support the conclusion that a taking has occurred. *City of Austin v. Travis County Landfill Co., L.L.C.,* 73 S.W.3d 234, 241 (Tex.2002). A property owner must demonstrate that the interference with the property's use and enjoyment is substantial. *Id.* at 243.

Jordan concedes that the lease gives Landry's "sole and exclusive possession of and sole and exclusive right to occupy the leased premises." Therefore, Jordan has no "right to access" that has been materially and substantially affected.

Jordan also conceded in its first amended petition that there are ways to access its property by other streets.[7] The overall plan provides ample parking and easy access to the property, and the restricting of traffic does not materially and substantially impair Jordan from entering the property. *See Olivares,* 505 S.W.2d at 530.

---

**6.** Section 272.001 is silent with respect to the necessity for consent of neighboring land owners.

**7.** "Jordan V cannot have egress from its property to other streets in the area, save one."

During appellate argument, Jordan conceded Bradford Street abuts the side of its property, and Bradford Street has remained open for vehicular traffic.

▆ There is no genuine issue of material fact as to the essential element of a "taking" in Jordan's cause of action for inverse condemnation, and it was not an abuse of discretion for the trial court to grant Landry's and Kemah's motions for summary judgment.[8]

We overrule Jordan's second point of error.

## IV. Local Government Code

In point of error three, Jordan contends the trial court erred in failing to apply Transportation Code section 311.008 and by granting summary judgment based on section 272.001 of the Local Government Code. As previously discussed, Kemah did not vacate, abandon, or close the street, but only restricted traffic to emergency vehicles and pedestrians; therefore, 311.008 did not apply. Section 272.001(a) permitted Kemah to sell part of Second Street to Landry's because Kemah owned the street and Jordan's consent was unnecessary. See TEX. LOC. GOV'T CODE ANN. § 272.001 (Vernon Supp.2002).

We overrule Jordan's point of error three.

## V. Waiver

▆ In point of error four, Jordan argues the trial court erred in granting summary judgment on its claims for breach of contract and "intentional and negligent damage to property, conspiracy, etc." Jordan does not discuss, argue, or cite any authority supporting its assertion in its brief that the trial court erred in granting

summary judgment on its common law claims. Therefore, Jordan has waived the point of error. TEX.R.APP. P. 38.1(h).

In point of error five, Jordan contends the trial court erred in ruling on the motions for summary judgment without first allowing sufficient time for discovery. In its "issues presented for review," Jordan asserts issue number five pertaining to the time allowed for discovery. However, Jordan does not discuss, argue, or mention this point of error again in its brief. Therefore, Jordan has waived the argument. TEX.R.APP. P. 38.1(h).

We overrule Jordan's points of error four and five.

## VI. Conclusion

We affirm the judgment.

---

8. Jordan claims its property value plummeted from $7 million to $700,000 after the street was closed. Although the Texas Constitution forbids the taking of private property without adequate compensation, it does not "require compensation for every decrease in market value attributed to a governmental activity." *Felts v. Harris County*, 915 S.W.2d 482, 484

(Tex.1996); *see also Tahoe–Sierra Preservation Council, Inc. v. Tahoe Regional Planning Agency*, 535 U.S. 302, ——, 122 S.Ct. 1465, 1485, 152 L.Ed.2d 517 (2002); *Penn Cent. Transp. Co. v. New York City*, 438 U.S. 104, 131, 98 S.Ct. 2646, 2663, 57 L.Ed.2d 631 (1978) (holding that diminution in fair market value, alone, does not establish a taking).