COURT OF APPEALS

                                                 SECOND
DISTRICT OF TEXAS

                                                                 FORT
WORTH

 

 

                                        NO.
2-08-386-CV

 

 

FREQUENT FLYER DEPOT, INC.,                                           APPELLANTS



GEORGE PIRKLE, AND ROBERT


PIRKLE

                                                   V.

 

AMERICAN AIRLINES, INC.                                                      APPELLEE

 

                                              ------------

 

            FROM THE 67TH
DISTRICT COURT OF TARRANT COUNTY

 

                                              ------------

 

                                             OPINION

 

                                              ------------








This is an accelerated interlocutory appeal from
the imposition of a temporary injunction prohibiting appellants Frequent Flyer
Depot, Inc. and its officers and owners, George and Robert Pirkle, from
engaging in the brokering, purchase, sale, bartering, and solicitation of
American Airlines AAdvantage7 rewards
points.  Appellants challenge the injunction
on seven grounds:  the underlying suit is
pre-empted by federal law; the injunction does not preserve the status quo;
there is no enforceable contract between American and its AAdvantage7 members
prohibiting members from selling their rewards points to third parties; the
hearing on the temporary injunction should have been continued for appellants
to obtain discovery on their antitrust-related counterclaims; American failed
to show an imminent injury; American has an adequate remedy; and principles of
equity bar the imposition of an injunction. 
Because we conclude that there is no reversible error on any of these
grounds, we affirm.

                                            Background








Frequent Flyer admittedly brokers the purchase
and sale of airline frequent flyer miles and awards, including AAdvantage7 rewards
points issued by American to its AAdvantage7 members.  The Pirkles are officers and owners of
Frequent Flyer.  American sued appellants
and other similar brokers and their principals, contending that the brokering,
purchase, bartering, and sale of AAdvantage7 rewards
is improper.  Among its claims against
appellants are claims for tortious interference with contract, tortious
interference with prospective relations, misappropriation, and fraud.  American also asserted a breach of contract
claim against Robert Pirkle.  After
filing suit, American sought and obtained a temporary injunction prohibiting
appellants from buying, selling, bartering, or soliciting AAdvantage7 rewards
during pendency of the suit.

                                       Standard
of Review

To be entitled to a temporary injunction, the
applicant must plead a cause of action and further show both a probable right
to recover on that cause of action and a probable, imminent, and irreparable
injury in the interim.  Butnaru v.
Ford Motor Co., 84 S.W.3d 198, 204 (Tex. 2002); Argyle ISD ex rel. Bd.
of Trustees v. Wolf, 234 S.W.3d 229, 236 (Tex. App.CFort
Worth 2007, no pet.); Fox v. Tropical Warehouses, Inc., 121 S.W.3d 853,
857 (Tex. App.CFort Worth 2003, no pet.).  A probable right of recovery is shown by
alleging a cause of action and presenting evidence tending to sustain it.  Wolf, 234 S.W.3d at 236; Fox,
121 S.W.3d at 857.  An injury is
irreparable if damages would not adequately compensate the injured party or if
they cannot be measured by any certain pecuniary standard.  Butnaru, 84 S.W.3d at 204; Wolf,
234 S.W.3d at 236; Fox, 121 S.W.3d at 857.








In an appeal from an order granting or denying a
temporary injunction, the scope of review is restricted to the validity of the
order granting or denying relief.  Walling
v. Metcalfe, 863 S.W.2d 56, 58 (Tex. 1993); Wolf, 234 S.W.3d at 237;
Fox, 121 S.W.3d at 857.  Whether
to grant or deny a request for a temporary injunction is within the trial court=s
discretion, and we will not reverse its decision absent an abuse of
discretion.  Butnaru, 84 S.W.3d at
204; Wolf, 234 S.W.3d at 237; Fox, 121 S.W.3d at 857.  Accordingly, when reviewing such a decision,
we must view the evidence in the light most favorable to the trial court=s order,
indulging every reasonable inference in its favor, and determine whether the
order was so arbitrary that it exceeds the bounds of reasonable
discretion.  Wolf, 234 S.W.3d at
237; Fox, 121 S.W.3d at 857.  A
trial court does not abuse its discretion if it bases its decision on
conflicting evidence and at least some evidence in the record reasonably
supports the trial court=s decision.  Davis v. Huey, 571 S.W.2d 859, 862
(Tex. 1978); Wolf, 234 S.W.3d at 237; Fox, 121 S.W.3d at
857.  When findings of fact are not
requested or separately filed, as in this case, we must uphold the  trial court=s order
on any legal theory supported by the record. 
Mabrey v. SandStream, Inc., 124 S.W.3d 302, 309 (Tex. App.CFort
Worth 2003, no pet.).

                                        Pre-emption
Claim








Appellants first contend that
American=s
noncontract claims against them are pre-empted by the Airline Deregulation Act
of 1978 (ADA), which provides, in part, that A[e]xcept
as provided in this subsection, a State, political subdivision of a State, or
political authority of at least 2 States may not enact or enforce a law,
regulation, or other provision having the force and effect of law related to a
price, route, or service of an air carrier that may provide air transportation
under this subpart.@ 
49 U.S.C.A. ' 41713(b)(1) (West
2007).  The United States Supreme Court
has held that threatened enforcement by state attorneys general of Afare
advertising guidelines@ was pre-empted by the ADA.  Morales v. Trans World Airlines, Inc.,
504 U.S. 374, 391, 112 S. Ct. 2031, 2041 (1992).  The Court has also held that claims brought
by AAdvantage7 members against American in
state court alleging violations of Illinois=s
Consumer Fraud Act were pre-empted by section 41713(b)(1).  Am. Airlines, Inc. v. Wolens, 513 U.S.
219, 226, 115 S. Ct. 817, 823B24
(1995).

Appellants allege that this suit likewise
involves an attempt to regulate prices, routes, or services that is pre-empted
by the Act.  American counters that any
suit brought against it attempting to apply standards to its AAdvantage7 program
would be pre-empted as an attempt to place state regulations upon prices,
routes, or services but that any attempt by it to enforce via state law its own
standards as to prices, routes, or services, including frequent flyer mile
credits, is not pre-empted as impermissible state regulation.  We agree with American.








In Morales, the Court considered the
effect the advertising restrictions would have on airlines= fares,
holding that the restrictions would curtail the airlines= ability
to communicate their fares to customers. 
Morales, 504 U.S. at 389, 112 S. Ct. at 2039B40.  But it also held that A>[s]ome
state actions may affect [airline fares] in too tenuous, remote, or peripheral
a manner= to have
pre-emptive effect.@ 
Id. at 391, 112 S. Ct. at 2040.

The Court further distinguished contract actions
in Wolens, holding that the Act does not shelter airlines from suits Aseeking
recovery solely for the airlines= alleged
breach of its own self-imposed undertakings.@  Wolens, 513 U.S. at 228, 115 S. Ct. at
824.  Although concluding that the Act
pre-empted AAdvantage7 members=
Illinois Consumer Fraud Act claims because mileage credits are akin to Arates,@ the
Court nevertheless held that as to contracts affecting such mileage credits, A[m]arket
efficiency requires effective means to enforce private agreements.@  Id. at 230, 115 S. Ct. at 824.

After Morales and Wolens, courts
have held that certain personal injury causes of actions against airlines are
not pre-empted by the Act.  See, e.g.,
Hodges v. Delta Airlines, Inc., 44 F.3d 334, 340 (5th Cir. 1995); Continental
Airlines v. Kiefer, 920 S.W.2d 274, 283 (Tex. 1996).  In explaining its decision in Kiefer,
the Texas supreme court noted that, Aas Wolens
explains at some length, claims are not [pre-empted] if they do not involve the
enforcement of policy-laden state law that too closely approaches a regulatory
effect on airlines.@ 
Kiefer, 920 S.W.2d at 283.








Here, although American has brought mostly tort
claims, those claims attempt to protect the vitality of its self-imposed
obligations:  those arising from the
AAdvantage7 program.  American=s
invoking the benefits and protections of state law to protect its own
agreements does not have the same impermissible regulatory effect upon prices,
routes, or services that Congress was concerned with in enacting section
41713(b)(1).  The Act was intended to
pre-empt only those state actions having a regulatory effect upon the airlines
rather than to preclude airlines from seeking the benefits and protections of
state law to enforce their self-imposed standards, regulations, and
contracts.  See id.  (A[T]he
purpose of ADA preemption is not to absolve airlines from all liability under
state law, but to prohibit state regulation of air carriers, direct or
indirect.  Congress= concern
was >that the
States would not undo federal deregulation with regulation of their own.=@); see
also Hodges, 44 F.3d at 337 (AFollowing
deregulation, the CAB=s [the former Civil Aeronautics
Board=s]
statements implementing the ADA strongly support the view that the ADA was
concerned solely with economic deregulation, not with displacing state tort
law.@).  Indeed, denying American access to state
courts for such purposes would seem to have such an impermissible regulatory
effect.








Appellants contend that it is unfair to allow the
airlines unfettered access to the state courts to enforce their own standards
related to frequent flyer programs while denying access to the state courts to
the states themselves and other parties attempting to impose standards on the
airlines under state law.  But the
fairness of this application is not for us to decide; we must abide by Congress=s
intentions when determining whether a suit is pre-empted by the Act.  See Morales, 504 U.S. at 383, 112 S.
Ct. at 2036 (noting that in determining whether a suit is pre-empted under the
Act, the question is one of statutory intent, and we must Abegin
with the language employed by Congress and the assumption that the ordinary
meaning of that language accurately expresses the legislative purpose@).

We conclude and hold that American=s suit
against appellants is not pre-empted by section 41713 of the Act.  We overrule appellants= first
issue.

                                             Status
Quo

In their second issue, appellants contend that
the injunction fails to preserve the status quo.  According to appellants, they have been
operating their business since 2002; they allege that American has known about their
activities since that time, or at least since the beginning of the
lawsuit.  Appellants claim that because
American knowingly allowed their activities to continue for some time, the last
peaceable uncontested status is to allow appellants to continue their business.








The purpose of a temporary injunction is to
preserve the status quo until a trial on the merits.  Butnaru, 84 S.W.3d at 204; Wolf,
234 S.W.3d at 237; Fox, 121 S.W.3d at 857.  AStatus
quo is defined as >the last, actual, peaceable,
noncontested status which preceded the pending controversy.=@  Universal Health Servs., Inc. v. Thompson,
24 S.W.3d 570, 577 (Tex. App.CAustin
2000, no pet.)  (quoting Transp. Co.
v. Robertson Transps., Inc., 152 Tex. 551, 261 S.W.2d 549, 553B54
(1953)); see Wolf, 234 S.W.3d at 237.

George Pirkle testified at the temporary
injunction hearing that an attorney for American called him Aseveral
times@ in 2002
about domain names connected to Frequent Flyer=s website,
frequentflyerdepot.com.  The attorney
told George that those domain names constituted trademark infringement and that
American wanted them back.  George told
the attorney that the domain names were connected to frequentflyerdepot.com,
and he agreed to give them to American. 
Although George testified that the attorney did not tell him to stop
operating frequentflyerdepot.com, he also admitted that he could not recall
whether they had talked about Frequent Flyer=s
brokerage business.  He also said that
the lawyer never told him that American would permit Frequent Flyer to sell
AAdvantage7 miles.








Since 2005, American has stopped travel on
tickets sold by Frequent Flyer by freezing the accounts of AAdvantage7 members
who American discovers have improperly sold their rewards points to a third
party.  But George Pirkle admitted that
American successfully discovers and stops travel on Frequent Flyer=s
transactions only between about three and four to ten percent of the time.  American=s representative
testified that these Apolicing@ efforts
are disruptive, causing operational difficulties for American and diverting
resources away from legitimate ticketing.

When American deposed George Pirkle as the
designated representative of Frequent Flyer,[1]
he admitted that Frequent Flyer Abrokers@
AAdvantage7 rewards points; in other words,
Frequent Flyer buys rewards points from AAdvantage7 members
and sells those points to third parties. 
He agreed that American had asked Frequent Flyer to stop doing so Aearlier
this year [2008],@ and he confirmed that Frequent
Flyer had refused.  American sought the
temporary injunction hearing shortly after taking appellants=
depositions.








If, as American claims, appellants=
activities are in violation of its agreements with AAdvantage7
members,[2]
the last peaceable, noncontested status is for appellants to refrain from
selling AAdvantage7 rewards points.  There is no evidence that American knew of
Frequent Flyer=s brokering activities in 2002
when its attorney contacted George Pirkle about the domain names; as George
himself testified, he bought around 136 domain names when he started.  Likewise, there is no evidence that American
knew in 2005 and later that the AAdvantage7
accounts it was freezing for the improper sale of rewards points were sold
through Frequent Flyer in particular.[3]  Even so, it is a reasonable inference that
American could not have known the full extent of Frequent Flyer=s
activities, considering George=s
testimony that Frequent Flyer transactions were Acaught@ only
between three to ten percent of the time.

American moved for a temporary injunction when it
learned the full extent of Frequent Flyer=s
activities and Frequent Flyer refused to discontinue those activities even in
the face of American=s suit.  American should not be denied its ability to
obtain injunctive relief to which it is otherwise entitled simply because it
took some time for it to discover Frequent Flyer=s
admittedly concealed activity.  See
Sharma v. Vinmar Int=l, Ltd., 231
S.W.3d 405, 428B29 (Tex. App.CHouston
[14th Dist.] 2007, no pet.) (holding that complete preservation of status quo
in case involving improper use of trade secrets to operate competing chemical
sales company was that new company would not be able to sell any of the
disputed chemicals).  We hold that the
trial court=s injunction properly preserves
the status quo pending resolution of the suit. 
Accordingly, we overrule appellants= second
issue.








  Enforceability
of Agreement Between American and AAdvantage7 Members

Appellants contend in their third issue that
there is no evidence that American has a binding contract with its AAdvantage7 members
such that appellants= actions in buying and selling,
and inducing AAdvantage7 members to buy and sell,
AAdvantage7 rewards points are improper as
alleged by American in its tort claims.

To become an AAdvantage7 member,
a person must agree to American=s online
User Agreement, which contains the following provision:  AAt no
time may AAdvantage7 mileage credit or award tickets
be purchased, sold or bartered.  Any such
mileage or tickets are void if transferred for cash or other consideration.@  The User Agreement also contains other
provisions allowing American to change the terms of the AAdvantage7
program, upon which appellants base their claim that the User Agreement lacks
mutuality and is, therefore, unenforceable. 
Specifically, the User Agreement states that American may,








in its discretion, change
the AAdvantage7 program rules,
regulations, travel awards, and special offers at any time with or without
notice. . . .  American Airlines may make
one or more of [certain enumerated] changes at any time even though such
changes may affect your ability to use the mileage credit or awards that you
have already accumulated.  American
Airlines reserves the right to end the AAdvantage7 program with six months
notice.[4]

 

According to appellants, this clause shows a fatal lack of mutuality,
rendering the entire agreement unenforceable.








A bilateral contract is one in which there are
mutual promises between two parties to the contract, each being both a promisor
and a promisee.  Hutchings v. Slemons,
141 Tex. 448, 174 S.W.2d 487, 489 (1943); The Colony, Tex. v. N. Tex. Mun.
Water Dist., 272 S.W.3d 699, 725 (Tex. App.CFort Worth,
no pet. h.).  A bilateral contract must
be based upon a valid consideration, in other words, mutuality of
obligation.  Fed. Sign v. Tex. S. Univ.,
951 S.W.2d 401, 409 (Tex. 1997); The Colony, 272 S.W.3d at 725.  Consideration may consist of either benefits
or detriments to the contracting parties; it may consist of some right,
interest, profit, or benefit that accrues to one party, or alternatively, of
some forbearance, loss, or responsibility that is undertaken or incurred by the
other party.  The Colony, 272
S.W.3d at 725; In re C & H News Co., 133 S.W.3d 642, 647 (Tex. App.CCorpus
Christi 2003, orig. proceeding).  The
existence of a written contract presumes consideration for its execution.  The Colony, 272 S.W.3d at 725; Doncaster
v. Hernaiz, 161 S.W.3d 594, 603 (Tex. App.CSan
Antonio 2005, no pet.).

A contract that lacks mutuality of obligation is
illusory and void and thus unenforceable. 
The Colony, 272 S.W.3d at 725; Tex. S. Univ. v. State St. Bank
& Trust Co., 212 S.W.3d 893, 914 (Tex. App.CHouston
[1st Dist.] 2007, pet. denied).  A
promise is illusory when it fails to bind the promisor who retains the option
of discontinuing performance without notice. 
Light v. Centel Cellular Co. of Tex., 883 S.W.2d 642, 645 (Tex.
1994); The Colony, 272 S.W.3d at 725; Rogers v. Alexander, 244
S.W.3d 370, 382 (Tex. App.CDallas
2007, no pet. h.).  But mutuality in each
clause of a contract is not required when consideration is given for the
contract as a whole.  Howell v. Murray
Mortgage Co., 890 S.W.2d 78, 87 (Tex. App.CAmarillo
1994, writ denied).








The test for mutuality is applied and determined
when enforcement is sought, not when the promises are made.  Hutchings, 174 S.W.2d at 489; Cherokee
Commc=ns, Inc. v. Skinny=s, Inc., 893
S.W.2d 313, 316 (Tex. App.CEastland
1994, writ denied).  Accordingly, even if
an illusory promise renders a contract unilateral, consideration can still be
established by part performance by the promisee.  Hutchings, 174 S.W.2d at 489; Cherokee
Commc=ns, 893
S.W.2d at 316; cf. Alex Sheshunoff Mgmt. Servs., L.P. v. Johnson,
209 S.W.3d 644, 650B51 (Tex. 2006) (distinguishing
general rule as to covenants not to compete, which, by statute, must be
enforceable when entered into).

Here, the clause pointed to by appellants allows
American to terminate the program upon notice and allows American to change the
terms of the program with or without notice. 
However, that does not mean American is without obligation to its
members under the User Agreements.  In
consideration for AAdvantage7 members=
purchasing paid travel on American and its partner airlines, and purchasing
other services from specified providers, American agrees to provide rewards
points to those customers.  It is
nonsensical for appellants to argue that no enforceable agreement exists when
their entire business depends on the enforceability of that agreement.  In other words, if American has no obligation
to issue a ticket in exchange for rewards points when an AAdvantage7 member
fully complies with the User Agreement, appellants are ill-positioned to
complain about the trial court=s
enjoining their activities, which depend on American=s
complying with its obligation even when a ticket is obtained in violation of
the applicable User Agreement. 
Appellants cannot have it both ways.








Additionally, as appellants point out in their
brief, American=s misappropriation claim Aas
alleged requires a showing that [appellants] >wrongfully[]obtained
award tickets.=@  The key word here is Aobtained,@ in the
past tense.  It is undisputed that
American has issued tickets in exchange for rewards points purchased through
Frequent Flyer.  With regard to those
tickets, then, American has performed under the applicable User
Agreements.  Thus, even if American=s
consideration was illusory when it entered into the applicable User Agreements,
its subsequent performance under those agreements established consideration,
rendering those agreements enforceable.  See
Hutchings, 174 S.W.2d at 489; Cherokee Commc=ns, 893
S.W.2d at 316.

The same holds true for tickets that American
will issue in exchange for rewards points in the future.  If American does not issue any such tickets,
then the question of whether American can enforce the no-sale rule is
moot.  But if American does issue tickets
in exchange for rewards points acquired through purchase or barterCthen it
will again have partially performed under the User Agreements at issue, thus
establishing the necessary consideration to render those agreements
enforceable.  See Hutchings, 174
S.W.2d at 489; Cherokee Commc=ns, 893
S.W.2d at 316.[5]








For these reasons, we conclude and hold that
American=s
AAdvantage7 User Agreements do not fail for
lack of mutuality, and we overrule appellants= third
issue.

                                            Continuance

In their fourth issue, appellants claim that the
trial court abused its discretion by refusing to continue the temporary
injunction hearing.








Appellants moved for a continuance both before
and after the temporary injunction hearing on the ground that American had
refused to produce documents in response to appellants= Third
Request for Production.  Appellants
requested these documents in conjunction with their counterclaims against
American for interference with contractual and business relations, tortious
interference with prospective relations, a declaratory judgment that appellants= actions
in purchasing and selling AAdvantage7 rewards
points are not improper, violations of the Texas Free Enterprise Act,
violations of the DTPA, and injunctive relief. 
In particular, appellants claimed they needed additional discovery on
their antitrust claims, their equitable defenses, and whether American had an
adequate remedy at law.  The gist of
appellants= counterclaims is that American
is a competitor and is unlawfully attempting to restrict their ability to
maintain a competing business.

Appellants=
complaint fails initially because they failed to support their written motion
for continuance with an affidavit as required by rule 251.  Tex. R. Civ. P. 251.  Generally, when a movant fails to comply with
rule 251, we presume the trial court did not abuse its discretion by denying a
motion for continuance.  Villegas v.
Carter, 711 S.W.2d 624, 626 (Tex. 1986); Sw. Country Enters., Inc. v.
Lucky Lady Oil Co., 991 S.W.2d 490, 493 (Tex. App.CFort
Worth 1999, pet. denied); see also Tri-Steel Structures, Inc. v. Baptist
Found. of Tex., 166 S.W.3d 443, 448B49 (Tex.
App.CFort
Worth 2005, pet. denied) (holding that trial court did not abuse its discretion
by denying motion for continuance when not in proper Aaffidavit
form@).








Appellants did not comply with rule 251; thus, we
conclude and hold that the trial court did not abuse its discretion by denying
their motion for continuance.  Moreover,
if necessary to protect a proven legal right, a temporary injunction may issue
even if it has the effect of restraining competition, so long as it is narrowly
tailored to preserve the status quo.  Sharma,
231 S.W.3d at 428B29 (AWhile
ordinarily a temporary injunction should operate as a corrective rather than a
punitive measure, when a choice must be made between a failure to provide
adequate protection of a recognized legal right and the punitive operation of
the writ, the latter course must be taken. @).  We overrule appellants= fourth
issue.

                                           Proof
of Injury

Appellants= fifth
issue complains that American failed to meet its burden to prove that it was
injured.

American alleged that it is injured by Frequent
Flyer=s
actions because customers who purchase void rewards points from appellants
(because those purchases violate the no-sale rule) would likely have purchased
tickets from American had they not obtained the void tickets; thus, those
customers likely displaced other AAdvantage7 members
or other paying American customers who would have purchased tickets had the
seats not been occupied by travelers using the void tickets.  American also alleged that it lost goodwill
with AAdvantage7 members in that those members
were prevented from using their AAdvantage7 rewards
points because seats were occupied by persons using the void tickets.  Appellants contend that American Aoffered
no evidence of any identified passenger, actual or potential, who suffered any
aspect of [American=s] litany of claimed injuries.@








A party proves irreparable injury for injunction
purposes by proving that damages would not adequately compensate the party or
cannot be measured by any certain pecuniary standard.  Butnaru, 84 S.W.3d at 204; Fox,
121  S.W.3d at 857.  An injunction is not proper when the claimed
injury is merely speculative, however; fear and apprehension of injury are not
sufficient to support a temporary injunction. 
Jordan v. Landry=s
Seafood Rest., Inc., 89 S.W.3d 737, 742 (Tex. App.CHouston
[1st Dist.] 2002, pet. denied) (op. on reh=g).

American offered the testimony of Jim Balsom,
Manager of AAdvantage7 systems and partner
support.  He testified without objection
that American is reluctant to challenge the veracity of AAdvantage7 members=
representations when booking travel because Athat
would not engender goodwill[;] in fact, [it would] probably cost [American]
significant goodwill if we were to do that.@  Additionally, he testified that such an
inquiry A[w]ould
take [a] significant amount of time and add significantly to [American=s]
costs.@








Balsom further testified that brokering
operations such as Frequent Flyer=s Acause[]
customers to question [American=s]
ability to manage and maintain the program and deliver the benefits that we=ve
promised to customers.@ 
He said that when American discovers a void transaction due to Frequent
Flyer=s
activities, its business is disrupted and it must divert resources away from
legitimate customers to deal with the void transactions.  He also testified that freezing the
AAdvantage7 accounts at issue causes ill
will for the member.  Balsom further
stated that dealing with these types of transactions causes Aoperational
difficulties or issues.@

Regarding displacement, Balsom testified that
when Frequent Flyer sells an AAdvantage7 member=s
rewards points to a third party, that third party displaces a customer Awho
would either pay cash for that ticket or . . . who would redeem AAdvantage7 miles
for the seat.@ 
He said it also Adoes use resources through
[American=s] reservations office [and]
potentially AA.com for other business purposes@ instead
of valid ticket sales.

Appellants challenge American=s
displacement evidence, pointing to Securities and Exchange Commission reports
filed by AMR, American=s parent company, showing that,
generally, between 2003 and 2007, twenty to thirty percent of seats on American=s
flights were empty.  It also points to
statements in those reports to the effect that, with respect to the AAdvantage7
program, AMR Abelieves displacement of revenue
passengers is minimal given the Company=s load
factors, its ability to manage frequent flyer inventory, and the relatively low
ratio of free award usage to total passengers boarded.@  According to appellants, absent evidence from
specific flights on which displacement occurred, American cannot overcome this
evidence of empty seats on its flights.








The SEC filings do not give information for
specific flights; indeed, the vacancies in paying seats may be higher due to
higher numbers of business travelers paying a lower price for rewards points
tickets through Frequent Flyer than paying for typical full-fare seats.[6]  And the isolated statement that displacement
is minimal is clearly in relation to the function of the program according to
its guidelines; in other words, passenger displacement is minimal when the
program is operating without outside influences.








American points to additional evidence as
supporting the proof of injury requirement, such as the fact that it is
virtually impossible to police appellants= actions
(when American discovers a void ticket, Frequent Flyer simply buys more miles
and issues a new one), that American has to devote resources to investigating
and policing appellants= actions that disrupt its
operation and divert its resources from legitimate customers, and the
unobjected-to evidence that American=s
inability to police activities such as Frequent Flyer=s causes
AAdvantage7 members to question its ability
to effectively run the program.

Disruption to a business can be irreparable
harm.  Lavigne v. Holder, 186
S.W.3d 625, 629 (Tex. App.CFort
Worth 2006, no pet.); David v. Bache Halsey Stuart Shields, Inc., 630
S.W.2d 754, 757 (Tex. App.CHouston
[1st Dist.] 1982, no writ) (AThis
harm would not only disrupt the organized business dealings of Bache but would
also threaten customer confidence in Bache=s
handling of their private affairs, and probably cause Bache to lose not only
customers but profits as well.@).  Moreover, assigning a dollar amount to such
intangibles as a company=s loss of clientele, goodwill,
marketing techniques, and office stability, among others, is not easy.  Martin v. Linen Sys. for Hosps., Inc.,
671 S.W.2d 706, 710 (Tex. App.CHouston
[1st Dist.] 1984, no writ).








American offered specific, undisputed evidence of
intangible harm to its business, including the AAdvantage7
program, resulting from appellants=
actions.  Balsom=s
testimony was not speculative and is supported by the Pirkles= own
testimony about Frequent Flyer=s
operations, specifically, its instructions to AAdvantage7 members
intended to conceal its activities from American.

We conclude and hold that American presented
evidence of an irreparable injury.  Thus,
we overrule appellants= fifth issue.

                                        Adequate
Remedy

In their sixth issue, appellants claim that if
American presented sufficient evidence to meet its burden of proof as to
injury, that same evidence shows that American has an adequate remedy in
damages.  Specifically, appellants claim
that damages can be calculated easily from AMR=s SEC
filings if American can provide the identity of specific displaced
passengers.  They also contend that
American cannot show lost profits because it has not made any profit since at
least 2002.

American counters that even if damages can be
assigned to displaced passengers, appellants Ado not
refute the evidence . . . that their conduct disrupts American=s
business . . . in many ways and affects the reputation and loyalty it has
developed over years with its customers.@

An adequate remedy is one that is as complete,
practical, and efficient to the prompt administration of justice as is
equitable relief.  Mabrey, 124
S.W.3d at 317.  Damages are an inadequate
remedy if they are difficult to calculate. 
Id. at 318B19.








According to American, while the evidence
appellants point to may show that some of its damages are calculable, it does
not show a way to calculate damages for American=s claims
of loss of goodwill and other intangibles. 
We agree.  As we have already
stated, the intangible types of injuries testified to by Balsom are the types
of injuries to which a dollar value may not easily be assigned.  Martin, 671 S.W.2d at 710.  A remedy is not adequate simply because some
of the proven damages are calculable.  See
Tex. Indus. Gas v. Phoenix Metallurgical Corp., 828 S.W.2d 529, 532 (Tex.
App.CHouston
[1st Dist.] 1992, no writ) (AFor a
legal remedy to be adequate, it must give the applicant complete, final, and
equal relief.@); see also Towers v. Grogan,
No. 01-97-00946-CV, 1998 WL 191760, at *4 (Tex. App.CHouston
[1st Dist.] Apr. 23, 1998, no pet.) (not designated for publication) (holding
that although some breach of contract damages were calculable, specific damages
for which Grogan sought injunctive relief were intangibles, incapable of being
measured by damages).

We conclude and hold that American proved that
damages are not adequate to fully compensate it for its injuries.  Accordingly, we overrule appellants= sixth
issue.








                                       Equitable
Concerns

Appellants= seventh
issue raises equitable claims, including laches and unclean hands.

Appellants first contend that American=s
temporary injunction claim is barred by laches because American has failed to
take action against appellants despite knowing since 2002 the type of business
Frequent Flyer was engaged in. 
Appellants claim Frequent Flyer has been prejudiced by American=s
inaction because the Pirkles never would have expanded the business since 2002
had they known American objected to Frequent Flyer=s
conduct.

A party asserting the defense of laches must show
both an unreasonable delay by the other party in asserting its rights and harm
resulting to it because of the delay.  Rogers
v. Ricane Enters. Inc., 772 S.W.2d 76, 80 (Tex. 1989);  In re Roxsane R., 249 S.W.3d 764, 771
(Tex. App.CFort Worth 2008, orig.
proceeding).  Here, we have already
discussed the lack of evidence that American knew or should have known of
appellants= activities when its lawyer
contacted George Pirkle in 2002 about the domain names.  In addition, we have also pointed to the
evidence that Frequent Flyer purposefully concealed its dealings from American
and instructed AAdvantage7 members to do the same.  Accordingly, we do not believe that the
evidence shows that American deliberately slumbered on its rights with regard
to appellants= conduct.








Moreover, there was evidence from which the trial
court could have concluded that appellants failed to show prejudice; the trial
court elicited testimony from George that Frequent Flyer=s
expansion also had to do with increased trade in other airlines=
frequent flyer miles.  George also
testified that he had been aware of American=s
no-sale provision since at least 2005 because American had stopped travel on
tickets bought with rewards points sold by Frequent Flyer before that
time.  Accordingly, we conclude and hold
that the trial court did not abuse its discretion by rejecting appellants= claim
of laches.








Appellants contend that American has unclean
hands because Athe evidence shows that
[American] is part of an illegal conspiracy with regard to the antitrust laws
of the United States and the State of Texas.@  According to appellants, the temporary
injunction prevents (and American=s suit
seeks to prevent) them from competing with American.  Appellants also claim that American must do
equity to obtain equity and that American has failed to do so by authorizing
Points.com and its airline partners to trade with members for AAdvantage7 rewards
points.  This argument appears to
incorporate appellants= antitrust and anticompetition
claims.  But as we have already held, an
otherwise proper injunction will not be rendered improper by claims that such
an injunction would have a preclusive effect on competition.  See Sharma, 231 S.W.3d at 429.  Thus, we conclude and hold that the trial
court did not abuse its discretion by rejecting appellants=
equitable defenses.

We overrule appellants= seventh
issue.

                                             Conclusion

Having overruled all of appellants= issues,
we affirm the trial court=s order granting the temporary
injunction.

 

TERRIE
LIVINGSTON

JUSTICE

 

PANEL:  LIVINGSTON, DAUPHINOT,
and MCCOY, JJ.

DELIVERED:  February 26, 2009











[1]American says in its
brief that the depositions had been delayed due to George Pirkle=s poor health; appellants
do not dispute this.





[2]Appellants do not
challenge on appeal whether American proved a probable right to recover on its
causes of action.





[3]George and Robert both
testified that Frequent Flyer instructs customers who purchase rewards points
from it to tell American that the points are a gift and that such
representations are lies.





[4]The agreement also states
that American Amay amend its rules of
the Program at any time without notice.@





[5]Moreover, we note that,
as a practical matter, American is effectively conceding the enforceability of
the User Agreements.  Appellants
criticize American for relying on cases construing similar airline passenger
incentive agreements because in those cases the passengers themselvesCwho were seeking to
enforce the agreementsCconceded the existence of
enforceable agreements.  See Mozingo
v. Alaska Air Group, Inc., 112 P.3d 655, 661B62 (Alaska 2005); Grossman
v. USAir, Inc., 33 Phila. Co. Rptr. 427, 431B32 (C.P. 1997).  But the key factor that makes this case
similar to those is that the party seeking enforcementChere, AmericanCeffectively concedes
enforceability of the agreements by attempting to enforce them.





[6]As the United State
Supreme Court noted in Morales,

 

The expenses involved in
operating an airline flight are almost entirely fixed costs; they increase very
little with each additional passenger. 
The market for these flights is divided between consumers whose volume
of purchases is relatively insensitive to price (primarily business travelers)
and consumers whose demand is very price sensitive indeed (primarily pleasure
travelers).  Accordingly, airlines try to
sell as many seats per flight as possible at higher prices to the first group,
and then to fill up the flight by selling seats at much lower prices to the
second group (since almost all the costs are fixed, even a passenger paying far
below average cost is preferable to an empty seat).  In order for this marketing process to work,
and for it ultimately to redound to the benefit of price-conscious travelers,
the airlines must be able to place substantial restrictions on the availability
of the lower priced seats (so as to sell as many seats as possible at the
higher rate), and must be able to advertise the lower fares.

 

504 U.S. at 389, 112 S.
Ct. at 2040.